BENJAMIN F. HUGHES, ADMINISTRATOR, v. WILLIAM O. PEALER, GUARDIAN, ETC.

*Equity—Mistake of law—Payment.*

A wife died, possessed of personal estate, and leaving a son and his step-father as her heirs. Shortly before her death, at the request of the husband, the wife gave directions as to the disposition of her property, but not in such a manner as to be *legally* binding upon her heirs. The husband was appointed administrator of her estate, and disposed of the property according to her directions. He afterwards filed a bill against the guardian of the son, to whom he had delivered the major portion of the property, to secure its return to him as administrator, to be distributed according to law, claiming to have turned it over under a *mistake* as to his *legal rights*, having been advised by the judge of probate that the son was his mother's *sole* heir. On a review of the testimony the Court find that complainant did not act under any misinformation or mistake as to the law, and that ignorance of the law would not afford him relief, even if it existed, and a decree is entered dismissing his bill.

Appeal from Van Buren. (Buck, J.) Argued April 25, 1890. Decided May 9, 1890.

. Bill to compel defendant to return to complainant certain personal property, or its avails, which he turned over as belonging to the ward, under an alleged mistake of law. Defendant appeals. Reversed, and bill dismissed. The facts are stated in the opinion.

*James H. Johnson* and *Dallas Boudeman,* for complainant, contended:

1. Counsel say, if there was a mistake, it was at best a mistake of law. We submit that complainant's mistake was one of *fact* as to what the law was; perhaps a mistake of both law and fact. Ignorance of law is scarcely susceptible of proof, but a *mistake* of law is, and, when proved, relief may be granted; citing *Hopkins' Ex'rs v. Mazyck,* 1 Hill, Eq. 250; *Champlin v. Laytin,* 1 Edw. Ch. 467; *Boone v. Ridgway's Ex'rs,* 29 N. J. Eq. 543; 3 Wait, Act. & Def. 163; *Harrison v. Stowers,* 1 Miss. 165; and in many instances a mere mistake of law will be relieved against; citing *Willan v. Willan,* 16 Ves. 72; *Bingham v. Bingham,* 1 Ves. Sr. 126; *Pusey v. Desbouvrie,* 3 P. Wms. 320; *Lansdown v. Lansdown,* Mos. 364; *Perrott v. Perrott,* 14 East, 439; *Fitzgerald v. Peck,* 4 Litt. (Ky.) 127; *Clayton v. Freet,* 10 Ohio St. 544; *Remington v. Higgins,* 54 Cal. 620; *Baker v. Massey,* 50 Iowa, 399.

2. Defendant, being an attorney, and seeing complainant about to place in his hands the property in question, was legally bound to apprise him of his rights in the property; citing *Leonard v. Leonard,* 2 Ball & B. 179, 180; *Gordon v. Gordon,* 3 Swanst. 462, 471, 473, 476, 477.

3. It is a well-settled principle of equity that where parties do not stand upon an equal footing, and there is any concealment of facts or withholding of the rights of the party to the transaction, through which the other party suffers wrong, relief will be granted; citing *Stewart v. Stewart,* 6 Clark & F. 911, 966–971; and it is likewise a rule in equity that a mixed mistake of law and fact will be relieved against; citing *Harrell v. De Normandie,* 26 Tex. 120; *Moreland v. Atchison,* 19 Id. 303; *King v. Doolittle,* 1 Head, 77; *Northrop's Ex'rs v. Graves,* 19 Conn. 553; *Evants v. Strode's Adm'r,* 11 Ohio, 480; and a mutual mistake of law or fact is relievable in equity; citing

*Clowes v. Higginson*, 1 Ves. & B. 524, 527; *Ramsden v. Hylton*, 2 Ves. Sr. 304; *Farewell v. Coker*, 2 Mer. 353.

4. Where there has been a mistake of only one of the parties, relief is still granted, especially when no consideration has been paid by the other; citing *Diman v. Railroad Co.*, 5 R. I. 130; *Dulany v. Rogers*, 50 Md. 524; *Hearne v. Ins. Co.*, 20 Wall. 488; *Brown v. Lamphear*, 35 Vt. 252, 259.

5. Where a party acts upon the misapprehension that he has no title to the property, it involves in some measure a mistake of fact, that is, of the fact of ownership, arising from a mistake of law, and he may have relief. Complainant supposed he had no interest in his wife's estate, while, as a matter of fact, he did have. A party cannot be said to intend to part with a title if he does not so intend, and a court of equity will grant relief in such cases; citing 1 Story, Eq. Jur. §§ 122, 130; and the true state of the law is always a fact; citing *Champlin v. Laytin*, 6 Paige, 189; *Hall v. Reed*, 2 Barb. Ch. 505; *Tabor v. Ins. Co.*, 44 Mich. 330; 3 Pars. Cont. 398.

*Pealer Bros.*, for defendant, contended:

1. The property, having been received in good faith in satisfaction of an equitable claim, and placed where in conscience it should go (it having passed to the boy's mother by the will of his father, who acquired it, and by her dying wish to the son) cannot be reclaimed; citing *Moore v. Eddowes*, 2 Adol. & E. 135 (note); *Farmer v. Arundel*, 2 Wm. Bl. 824.

2. The general rule is that courts of equity, as well as of law, will not relieve for mistakes of law alone; citing Story, Eq. Jur. §§ 111–116, 126; *Martin v. Hamlin*, 18 Mich. 354; *Ledyard v. Phillips*, 32 Id. 14; *Advertiser & Tribune Co. v. Detroit*, 43 Id. 116; *Wayne Co. v. Randall*, Id. 137; *Lapp v. Lapp*, Id. 287; *Tompkins v. Hollister*, 60 Id. 470.

GRANT, J. Complainant was the husband of Mary A. Hughes, deceased. They were married in August, 1886. She was then a widow, her former husband having been dead about 10 years. She had one child, the issue of her first marriage, whose name was Claude Bunn. She died intestate in April, 1887, eight months after her marriage with complainant, leaving personal property valued at about $3,700. June 27, 1887, complainant was appointed administrator of here estate, and filed an inventory under oath, consisting of six promissory notes, aggregating

$2,680.51. Aside from these notes, she left $844.56 in cash, a horse, gold watch, robes, a diamond ring, some household furniture, and wearing apparel.

Shortly after her death defendant, Pealer, was appointed guardian of her son. He wrote to complainant stating that he was in need of funds to provide for the proper care and education of his ward, and requested him to turn over the property that belonged to the son. In reply to such letter, complainant, on September 7, 1887, sent to defendant the notes above mentioned, as the property which belonged to him as guardian.

On May 28, 1889, complainant filed this bill, alleging that he turned this property over to defendant because he was advised by the judge of probate of Van Buren county, Hon. O. N. Hilton, that he had no pecuniary interest in his wife's estate; that her son, Claude Bunn, would eventually be entitled to the whole of it, and that he might as well turn the property over to defendant; that he acted solely upon this advice of the judge of probate, and would not have turned the property over if he had supposed that he had any interest in it; that the turning over of said property was a mistake which consisted in the fact that the information so received, and upon which he acted, was incorrect; that shortly before the filing of this bill he ascertained the mistake, demanded a return of the property, and, upon defendant's refusal, commenced this suit to compel the defendant to return the property or its proceeds, if he has collected or changed the securities, to complainant, for distribution under the rule of the probate court.

Answer was filed denying the material allegations in the bill, and asserting that complainant had disposed of the property in accordance with the wishes of Mrs. Hughes expressed to him shortly before she died, and with knowledge of all his rights therein; that his act in

turning the property over was voluntary; and that he is now estopped from making any claim thereto.

Proofs were taken in open court, and a decree rendered in favor of complainant in accordance with the prayer of the bill, directing the defendant to return to complainant the securities in so far as they were still in existence, and the avails of any that have been collected, and any that have been substituted. The learned circuit judge filed a written opinion, in which he says:

"Upon a careful consideration of all the evidence in the case, and the arguments and briefs of counsel for the respective parties, I am constrained to conclude that the facts proved support the complainant's claim, and that he is entitled to the relief sought by him in this suit. If his testimony is true, his delivery of the securities belonging to his intestate by him to the defendant would not have occurred had it not been for the erroneous advice given complainant by the probate judge, and upon which he relied. Upon this point there is no real conflict in the testimony."

Complainant's case depends entirely upon his own testimony. The judge of probate had left the State, and could not be found. Briefly told, his story is that, shortly before his wife died, he told her that she was very sick, that there was a possibility that she would not get well, and asked her if there were any arrangements she desired to make in case she should die. After speaking of some things, not material here, she said to him:

"From that money you keep $500 for yourself, pay my funeral expenses and expenses of my sickness, and the balance of the money you give to Claude. I want you to have the horse, and there is my gold watch; you take that, and keep it."

He also testified that she spoke of a ring and some articles of furniture which she requested be kept for Claude. Upon her death he carried out her wishes. He kept the $500, the horse, the watch, and also the rest of

the money; turned over the furniture and ring to relatives of the boy; gave her wearing apparel to her sisters, and her sewing-machine to her mother, which she had evidently requested, as appears from the testimony of others who were present at the conversation. She was sick about two weeks, and he says the expenses of her sickness and the funeral expenses were not much. He has not filed any account as administrator, and retains the balance of the money.

Claude Bunn and her sister, Mrs. Francisco, were present at the conversation. Mrs. Francisco testified that complainant asked his wife what she was going to do with her property; and that she replied as to the specific articles substantially as above stated by complainant, except that she included a harness and robe to him, her apparel to her sisters, and sewing-machine to her mother, and that she then said: "The rest should all go to Claudie." This was conditioned upon her death. This witness further says that he said to her:

"You are very low, and you had better make a statement about the property, so it will be satisfactory among us all."

Claude testified that his mother, after specifying the various articles already referred to, said that the rest of the property and money should be given to him. Mrs. Weinberg, the mother of Mrs. Hughes, testified that complainant told her, shortly after the funeral, that he had got $500, a harness, horse, watch, and robes, and that "the others were Claudie's."

Complainant's version of the alleged mistake is as follows:

"I showed him [the judge of probate] the letter that I had received from Mr. W. O. Pealer, requesting me to send some of the notes there, and I asked him who the property belonged to. He wanted to know how many

children there were. I told him there was one. He wanted to know if it was personal property. I told him, 'Yes.' He says: 'It belongs to the boy.' I asked him then if it would be proper and right for me to turn over the notes to the guardian of the boy; whether my receipt would be accepted all right in settlement of my account there. He told me, 'Certainly it would;' that it was all proper and right; that it eventually all went to the boy anyway. Under that instruction I went home, and mailed the notes to W. O. Pealer, who receipted for them."

Judge Hilton had been judge of probate nearly seven years at the time of this conversation, and of necessity must have been familiar with the law governing the distribution of the estates of deceased persons. Complainant was a merchant and postmaster in the village where he resided. The law, of which he claims he was ignorant, and about which he says he was misinformed, was upon the statute, and had been there for 20 years.[1]

The circuit judge was correct in his conclusion that the expressed wish of the deceased as to the disposal of her estate cannot be maintained either as a will or as a *donatio causa mortis*. Complainant might have ignored her wish and direction, inventoried and accounted for all the property, and had it distributed according to the statute. It is fair to presume that complainant knew that if there were no statute the mother's property would descend to her son. It is a matter of common knowledge that children inherit the property of their parents. He must be ignorant, indeed, who does not know this. Whatever his motive was in suggesting to his wife that she express what disposition she desired made of her property, in the event of her death, we need not inquire. It is sufficient for this case to know that she gave express directions and that he immediately carried them out, and acquiesced in them.

---

[1] See How. Stat. § 5847, subd. 7, under which one-half of the residue of the personal property belonged to complainant.

The first material inquiry is, were these notes included within that direction? We are unembarrassed by any finding of the circuit judge upon this point. The complainant's claim is supported by his own testimony alone. His interest is certainly as great as that of the son, and the testimony of the one is as likely to be influenced by this as is that of the other. Whether he supposed that he had no legal interest in his wife's property, or whether he knew that he had an interest, he was evidently willing, if not anxious, to obtain property to which he either supposed or knew that the law would give him no title. As between him and the son we find nothing that would throw the preponderance of evidence in his favor, especially in view of the fact that it is highly improbable that Mrs. Hughes intended to give to her husband nearly two-thirds of her small estate. But the corroborating testimony above stated leaves us in no doubt upon this point. We cannot reach the conclusion of the circuit judge that complainant acted under a mistake of law. It is almost incredible that one who had been judge of probate for six years, in one of the old and populous counties of the State, and who must have directed the distribution of many estates, should have given complainant the advice claimed. The statement bears its own refutation, for claimant says that the judge wanted to know how many children there were. Why should he ask this, if he did not know that complainant's interest depended upon the number of children?

Under this record we think it clear that complainant did not act under any misinformation or mistake as to the law. In any aspect of the case, he can only be held to have acted in ignorance of the law, but this would afford him no relief. Complainant's claim is not based upon any equity, but upon strict legal right. He does not even offer to do equity by restoring to the estate that

which he has taken and converted to his own use. He disposed of the property in accordance with his wife's direction, and as natural right directed, except as to that taken by himself. Neither his bill nor the evidence makes a case for the interposition of a court of equity. There was no fraud nor any contract based upon the alleged mistake. The questions involved are purely of law and fact. If he turned over these securities by mistake, a court of law would furnish him an ample remedy to recover them back, or, if converted, their value.

The decree of the court below must be reversed, with costs of both courts, and decree entered in this Court, dismissing the bill.

The other Justices concurred.