(No. 50590.—

COMMERCIAL NATIONAL BANK OF PEORIA, Adm'r, Appellant, v. IOLANDA B. BRUNO *et al.*, Appellees.

*Opinion filed April 18, 1979.*

344

MORAN and UNDERWOOD, JJ., concurring in part and dissenting in part.

Julian E. Cannell and Phillip B. Lenzini, of Peoria (Kavanagh, Scully, Sudow, White & Frederick, of counsel), for appellant.

Vincent J. Pascucci, of Chicago (Griffin, Fiedler & Pascucci, Ltd., of counsel), for appellees.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondents, Iolanda B. Bruno and Santo Di Pietro Bilotti, appealed from the judgments of the circuit court of Peoria County entered in favor of petitioner, Commercial National Bank of Peoria (hereafter bank), against each of said respondents in the amount of $15,307.25 and costs. The appellate court reversed (56 Ill. App. 3d 552), and we allowed the bank's petition for leave to appeal.

Sam Bilotti, also known as Sam Belotto, died intestate

on April 9, 1975. The attorney for the bank, which had acted as Bilotti's conservator during his lifetime, met with respondents, who were the niece and nephew of the decedent. They gave the attorney the names of five nieces and nephews of the decedent whom respondents had not seen in more than 20 years, but who were believed to be residing in France or Australia. Respondents were unable to provide addresses for any of the other nieces or nephews.

The bank filed a petition for letters of administration, and notice of the hearing was published in a local newspaper. The bank was appointed administrator and filed an affidavit of heirship listing the respondents as heirs, and naming the five unlocated nieces and nephews, but stated that it was not known whether they were living and that there might be unknown heirs "some of whom may be minors." Upon completing the administration the bank filed a final report and account showing distribution of $23,140 to each respondent, and on March 9, 1976, an order was entered discharging the bank and closing the estate.

On December 15, 1976, an attorney in fact for the five nieces and nephews of whom the bank's attorney had been advised, and an additional nephew, filed a petition pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) praying that the order discharging the administrator be vacated and "the estate herein be reopened for the purpose of pursuing the administrator for the statutory shares due the heirs represented by your petitioner as attorney in fact." The attorney in fact also filed a petition for citation asking that an order be issued against the bank directing it to appear in open court "and give testimony as to the whereabouts of all funds due and owing the heirs represented by your petitioner" and that the bank "be directed and commanded to produce in open court all funds due and owing

the heirs represented by your petitioner."

Following the filing of the petition and citation, the bank filed a petition for an order for partial refunding of distribution asking that each respondent be required to refund the sum of $15,426.68 "plus a reasonable amount to cover further costs." It also filed a petition to amend the order of heirship.

The circuit court denied the petition filed pursuant to section 72 of the Civil Practice Act. On its own motion it ordered that the order of discharge entered on March 9, 1976, be vacated, that the estate be reopened, and that the bank be reinstated as administrator. The order stated that the court's actions were taken pursuant to the provisions of section 24—9 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 24—9). The hearing on the citation filed on behalf of the foreign heirs was continued to a date certain, and although a docket entry shows it was later taken under advisement, no subsequent order was entered.

Under the amended order of heirship approved by all counsel, respondents would be entitled to inherit one-third of the decedent's estate. Following the taking of testimony and consideration of briefs, the circuit court entered judgment in favor of the administrator and against each of the respondents in a sum which equalled two-thirds of the amounts received in the original distribution.

Section 24—9 of the Probate Act of 1975 in pertinent part provided:

> "If a decedent's estate has been closed and the representative discharged, it may be reopened to permit the administration of a newly discovered asset or of an unsettled portion of the estate on the petition of any interested person. If the petition asks the appointment of the former representative or a successor designated by the will, the court may order such notice of the hearing on the petition to be given to any interested persons as it directs or the court may hear the petition without notice." (Ill. Rev. Stat. 1975, ch. 3, par. 24—9.)

In reversing the judgments the appellate court held that in order to invoke the provisions of section 24—9, it was necessary that there be either newly discovered assets or an unsettled portion of the estate, and absent the showing that there was either, the circuit court erred in reopening the estate.

The bank contends that since all parties have admitted that respondents were overpaid by mistake, and that this fact was clearly set out in the petition filed by the six heirs who did not receive their distributive shares, the appellate court erred in reversing the circuit court's order reopening the estate. In discussing this same contention the appellate court said:

"The petitioner bank in its brief asserts that the trial court arrived at the correct result in ordering that the estate be reopened even though the reasoning used by the trial court in relying on section 24—9 of the Probate Act of 1975 was erroneous. It is interesting to note that the record discloses that the section 72 petition filed in the trial court by the alleged nieces and nephews was directed against the petitioner bank in that the prayer of the petition requested that the estate be reopened for the purpose of pursuing the administrator for the statutory shares due the heirs and that further the administrator be assessed with all costs and reasonable attorney's fees for prosecuting the cause. Coupled with the filing of the section 72 petition was the filing of a petition praying for citation proceedings to issue against the petitioner bank. At the hearing on these petitions counsel for the petitioner bank contested the allegations contained in them and the relief requested, yet in this appeal now contends that a section 72 petition was the correct and proper way to vacate the order closing the estate.

> Once the trial court ordered the estate reopened and further directed that the respondents make a partial refund of the distribution received by them, the section 72 petition became more palatable." (56 Ill. App. 3d 552, 556.)

We agree with the appellate court's appraisal of the argument and also agree that under its explicit provisions section 24—9 may be invoked only to administer "a newly discovered asset or of an unsettled portion of the estate." Here there were no newly discovered assets and the estate was settled in its entirety and the administrator discharged.

Although we have held that the circuit court erroneously invoked section 24—9 to reopen the estate, we will consider the controverted issues on their merits. The parties have urged that we disregard the procedural defects, if any, and determine the controversy on its merits and we have before us a record sufficient to enable us to do so. The bank contends that respondents can be ordered to refund to the adminstrator the distributions to which they were not entitled, that the circuit court had the authority to reopen the probate proceeding and hear the petition for restitution, that the administrator was not guilty of negligence or dereliction of duty, and that the judgment of the circuit court is supported by the record. Respondents contend that the administrator, who with knowledge of all the facts made the distribution by reason of a mistake of law, cannot seek a refund where the distributees were guilty of no fraud, undue influence or coercion. They argue too that the administrator was guilty of negligence and dereliction of duty and therefore cannot recover from the respondents any funds distributed, even though they may have been wrongfully received. Finally, they contend that the findings of the circuit court are contrary to the manifest weight of the evidence. The parties have cited numerous authorities (*Cleaveland v. Draper* (1907), 194 Mass. 118, 80 N.E. 227; *Scott v. Ford*

(1904), 45 Ore. 531, 78 P. 742; Restatement of Restitution sec. 19 (1937); Restatement of Restitution sec. 126(1), Comment c, at 516 (1937); *Harding v. Hewes* (1935), 87 N.H. 488, 179 A. 343; *Nashville & American Trust Co. v. Baxter* (1937), 171 Tenn. 494, 105 S.W.2d 108; *Shriver v. Garrison* (1887), 30 W. Va. 456, 4 S.E. 660; *Hughes v. Pealer* (1890), 80 Mich. 540, 45 N.W. 589; *Magee v. Keegan* (1858), 35 Miss. 244; *Smith v. Muse* (1925), 138 Miss. 518, 103 So. 356; *Gwynn v. Hamilton* (1856), 29 Ala. 233; 70 C.J.S. *Payment* sec. 156 (1951); Annot., 147 A.L.R. 121, 123 (1943)), but in our opinion there is little to be gained from attempting to reconcile or distinguish them. Although some older authorities have attempted to draw a distinction between a mistake of law and ignorance of the law, and in at least one instance the right to restitution was limited because of changed circumstances (see *Moritz v. Horstman* (1943), 305 Mich. 627, 9 N.W.2d 868), in most cases in which the precise question has been considered, it has been held that when an administrator, with knowledge of all the facts, voluntarily distributed portions of the estate to legatees or heirs in excess of the amounts to which they were entitled, the administrator cannot recover the amounts thus erroneously paid. See Annot., 147 A.L.R. 121, 122 (1943).

The record in this case leads inexorably to the conclusion that the distribution to respondents was made as a mistake of law. The trust officer for the bank, and its attorney, were advised concerning the identity of the other heirs, and except for the publication in a local newspaper, appear to have made no effort whatsoever to ascertain whether or where they were living. The only conclusion which can be drawn from the record is that the distribution was made on the theory that if the other heirs failed to appear within the period of administration, respondents were entitled to distribution of the decedent's residual estate. The long-established rule in this jurisdiction is that

in the absence of fraud, misrepresentation or mistake of fact, money voluntarily paid under a claim of right to the payment with full knowledge of all the facts by the person making the payment cannot be recovered unless the payment was made under circumstances amounting to compulsion. (*Groves v. Farmers State Bank* (1937), 368 Ill. 35, 47.) We perceive of no reason why the rule should not be applicable here, and we hold that the bank is not entitled to recover any part of the sums paid respondents.

Section 24—2 of the Probate Act of 1975 provides:

> "Notice of the hearing on any account of a representative of a decedent's estate shall be given as the court directs to unpaid creditors and to every person entitled to a share of the estate who has not received that share in full. If the account is approved by the court upon the hearing, in the absence of fraud, accident or mistake, the account as approved is binding upon all persons to whom the notice was given. No notice need be given to any person from whom a receipt in full is exhibited to the court or who waives notice." (Ill. Rev. Stat. 1975, ch. 3, par. 24—2.)

The order approving the bank's report of distribution was not *res judicata* as to the foreign heirs who received no notice (*Hedlund v. Miner* (1946), 395 Ill. 217), and the circuit court was empowered to set aside an order entered by reason of fraud, accident or mistake (*Heppe v. Szczepanski* (1904), 209 Ill. 88; *Strauss v. Phillips* (1901), 189 Ill. 9; *Marshall v. Coleman* (1900), 187 Ill. 556; *Millard v. Harris* (1887), 119 Ill. 185).

Although no appeal was taken from the denial of the petition filed under section 72, the petition for citation filed by the foreign heirs which apparently remains pending and undetermined before the circuit court adequately presents their claims.

For the reasons herein set forth, the judgment of the appellate court is affirmed and the cause is remanded to the circuit court of Peoria County for further proceedings

on the petition for citation.

*Affirmed and remanded.*

MR. JUSTICE MORAN, concurring in part and dissenting in part:

The relief sought by the five nieces and nephews of the decedent in their section 72 petition was denied by the trial court. Because the correctness of the denial was not appealed, that decision has become final, and the trial court is without jurisdiction, on remand, to afford a remedy under that petition.

The action which remained—that taken, *sua sponte*, by the trial court under section 24—9 of the Probate Act—has been eliminated by the majority's opinion. Consequently, there is no cause of action, either under section 72 or under section 24—9, pending before the trial court. The majority has, nevertheless, remanded the cause to the trial court for further proceedings on the petition for citation.

A petition for citation is an ancillary process, much like a subpoena, founded upon a pending legal proceeding before the court. It is not an original action and cannot, therefore, invoke the trial court's jurisdiction.

I would affirm the appellate court's reversal, without remand, and thereby leave the parties to pursue other separate remedies that might be available to them.

MR. JUSTICE UNDERWOOD joins in this partial concurrence and partial dissent.