# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Gulino v. Economy Fire & Casualty Co.*, 2012 IL App (1st) 102429

---

| | |
|---|---|
| Appellate Court Caption | THEODORE GULINO, Plaintiff-Appellant, v. ECONOMY FIRE AND CASUALTY COMPANY, and METLIFE AUTO AND HOME INSURANCE COMPANY, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-10-2429 |
| Filed | March 30, 2012 |
| Rehearing denied | May 1, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in granting summary judgment for plaintiff's insurer in his action alleging breach of contract arising from the denial of plaintiff's claim for structural damage to his home on the grounds that the loss did not constitute a "collapse" under the policy and that plaintiff neglected to use reasonable means to preserve the property when endangered by a potentially covered loss, since plaintiff alleged sufficient facts to show a loss covered by his homeowner's policy, he presented a counteraffidavit in response to the insurer's motion for summary judgment, he claimed he did not know the basement ceiling collapsed until after he discovered his basement had flooded, the insurer did not question the sufficiency of that affidavit before the trial court, and under the circumstances, a genuine issue of material fact existed as to the cause of the loss. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-1903; the Hon. Charles R. Winkler, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Theodore Gulino, *pro se*, and Robert D. Shearer, Jr., both of Chicago, for appellant. |
| | Condon & Cook, L.L.C., of Chicago (Peter W. Schoonmaker and Guy M. Conti, of counsel), for appellees. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justice Cunningham concurred in the judgment and opinion. Presiding Justice Quinn dissented, with opinion. |

## OPINION

¶ 1    Plaintiff, Theodore Gulino, appeals the order of the circuit court granting defendant Economy Fire & Casualty Company's (Economy) motion for summary judgment on Gulino's breach of contract claim. The trial court found that Gulino failed to set forth a *prima facie* case that his insurance policy with Economy covered water damage to the basement of his residence. On appeal, Gulino contends the trial court erred in granting summary judgment where genuine issues of material fact exist as to (1) whether the loss was fortuitous and thus covered by the policy; (2) whether the damage resulted from a collapse as defined in the policy; and (3) whether an exclusion to coverage applies because Gulino neglected to take reasonable measures "to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against." For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

¶ 2                                    JURISDICTION

¶ 3    The trial court entered summary judgment in favor of defendants on July 26, 2010. Plaintiff filed a notice of appeal on August 20, 2010. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                    BACKGROUND

¶ 5    In January 2006, Economy issued an all-risk homeowner's insurance policy to Gulino covering property located at 1800 Forest Avenue in Wilmette, Illinois. The policy covered the period from January 22, 2006, through January 22, 2007. It provided that Economy "will pay for sudden and accidental direct physical loss or damage to the property *** except as

excluded in Section I–Losses We Do Not Cover." It further provided that Economy "will pay for sudden and accidental direct physical loss to covered property including the entire collapse of a building or any part of a building" caused by "certain perils," including "weight of contents." The policy defined "collapse" as "an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse." The policy excluded coverage for the insured's "[n]eglect *** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against."

¶ 6    On February 26, 2006, Gulino returned home at approximately 1:30 a.m. and noticed that the heat was not working. He went down to the basement to check the furnace and noticed several inches of water on the floor. The water flowed from a pipe above the washing machine. Gulino could not find the shut-off valve so at around 8 a.m. he called a plumber, who contacted the village of Wilmette (village) and had the water turned off. At that point, more than a foot of water was on the basement floor. The plumber inspected the property, finding excessive amounts of paper and debris piled throughout the residence. He contacted the village, and the following day, the village posted a notice that the property was dangerous and uninhabitable. An architect retained by the village subsequently inspected the property and found several thousand pounds of paper and other debris on the first floor of Gulino's home. Gulino was not permitted to live in the residence and he moved to an extended-stay hotel. Shortly thereafter, Gulino submitted a claim to Economy. Economy acknowledged Gulino sustained a water loss and paid for water damage to property in the basement area. However, it denied his structural damage claim on the grounds that the loss did not constitute a "collapse" under the policy and that Gulino "neglected to use reasonable means to preserve [the] property when endangered by a potentially covered loss."

¶ 7    Gulino filed a complaint on February 20, 2007, and filed an amended complaint on November 15, 2007.[1] In the amended complaint Gulino alleged that Economy breached its contract with him when it denied his claim. Gulino further alleged that the loss occurred after the basement ceiling "suddenly sagged," which disabled the heating system of the home and caused the water pipes in the rear to freeze and split. As a result, large quantities of water entered the basement causing substantial damage. In its answer, Economy denied that the ceiling "suddenly sagged" and claimed insufficient information to admit or deny Gulino's allegation that the sagging ceiling disabled the heating system of the home. Economy admitted that Gulino sustained water damage in the basement but denied that the pipes in the home froze and split. It filed affirmative defenses asserting that Gulino's alleged structural damage loss resulted from sagging, bowing, or bending floor joists and not the result of a "collapse," and that by allowing excessive quantities of debris to accumulate on the property he failed to "use all reasonable means to save and preserve [the] property at and after the

---

[1]MetLife Auto & Home Insurance Company was originally named a defendant but was dismissed with prejudice on May 7, 2008. Therefore, it is not a party to this appeal.

time of loss." Therefore, the policy excluded coverage for the loss and Economy did not have a duty to indemnify Gulino.

¶ 8    In his deposition, Gulino testified that prior to the February 26, 2006, incident, which resulted in a citation from the village, he had received a citation in 2004 for having a hole in the roof of his house which he had fixed. He also stated that the hot water in his home stopped working in 2005 and he bought a new gas hot water heater from Home Depot and had it installed on January 16, 2006. Gulino stated that the installers examined the gas line. After the February 26 incident, the village determined that the home was uninhabitable. Gulino notified Economy of his loss less than a week after the incident, and Economy opened a claim file, helped pay for a few weeks' stay in a hotel, and sent checks for water damage to clothes and other items that had been in the basement. It also sent someone to the house to view the property, which had been boarded up by the village.

¶ 9    Gulino asserted that a portion of the basement ceiling was collapsed about eight inches and the collapsed ceiling subsequently disabled the heating system. He further asserted that some of the pipes in the rear of the house were frozen and split, which resulted in large quantities of water flowing into the basement. Gulino stated that the piles of papers and debris accumulated over a period of five years or less. He asserted that the photographs of debris on the first floor near the entry way of the home did not accurately depict the amount of materials actually on that floor. He stated that he could open the front door and that "[t]he rest of the first floor had a lot less materials." Gulino was informed that the cost of renovating the home to bring it up to code would likely exceed $500,000. He sold the property to a developer who subsequently demolished the house.

¶ 10    Demetrios Criezis testified in his deposition for the defense that the village retained him in March 2006 to inspect Gulino's property and render an opinion on its condition. He stated that the property was neglected and looked as if it had not been cared for in many years. The first floor of the home had piles of papers, newspapers, magazine clippings, and articles stacked approximately six to seven feet high. He stated that it was difficult to walk past the front door and he did not inspect the second floor of the home because the stairway was covered with newspapers and inaccessible. Criezis stated that the load on the first floor from all of the debris was 420 pounds per square foot and that a standard home is designed to withstand about 60 pounds per square foot.

¶ 11    He further noticed that in the basement the floor joists were bending and bowing and had been pulled off their beam bearings. When asked how long it would take for such damage to occur, Criezis responded, "[I]t's a guess, probably related to the load of the paper above, I'm not sure, it could have been six months, it could have been at least a year." He opined that "the integrity of the structure ha[d] been compromised by the heavy loading of all the papers stacked above" and that the house was not safe for human occupancy. He asserted that the overloading from the debris throughout the house could have resulted in a collapse of the structure but that it had not yet collapsed upon his inspection.

¶ 12    On April 5, 2010, Economy filed a motion for summary judgment arguing that: (1) the loss was not sudden or accidental, but instead was the inevitable result of the accumulation of debris over several years; (2) the loss did not constitute a "collapse" as defined in the

policy; and (3) the loss was the result of Gulino's failure to use reasonable means to preserve the property at the time of loss or when it was endangered by a potentially covered collapse. Gulino filed a counteraffidavit in response to the summary judgment motion. In his counteraffidavit, Gulino stated that up to the time of the incident, he regularly visited the basement two to three times a month and never noticed "settling, cracking, breaking, bending, bowing, bulging or expanding" of the basement ceiling. He further stated that the affected joists were located under an area of the foyer approximately four to seven feet from the front door. At the time of the incident, this space was occupied only with an empty lightweight desk against the wall and a stack of papers about two feet high. He asserted that the first time he was aware of any problem with the basement ceiling was February 28, 2006.

¶ 13      After a hearing the trial court granted Economy's motion for summary judgment on July 26, 2010. It stated that "for the reasons set forth by defendant, the plaintiff in this case will be unable to prove or to set forth a *prima facie* showing that there was a breach of contract. Neglect, the most obvious, the other two certainly support it most favorably and to the point where the plaintiff has not refuted to the court's satisfaction the position maintained by the defendant during this hearing." Gulino filed this timely appeal.

¶ 14                                          ANALYSIS

¶ 15      Summary judgment is appropriate when the pleadings, affidavits, depositions and admissions in the record, when viewed in the light most favorable to the nonmoving party, reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *McLear v. Village of Barrington*, 392 Ill. App. 3d 664, 669-70 (2009). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of triable fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). "Although summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic measure and should be granted only if the moving party's right to judgment is clear and free from doubt." *Land v. Board of Education*, 202 Ill. 2d 414, 432 (2002). The nonmoving party need not prove his case in response to a motion for summary judgment, but he must present a factual basis entitling him to judgment. *Id.* We review the trial court's grant of summary judgment *de novo*. *McLear*, 392 Ill. App. 3d at 669.

¶ 16      To withstand a motion for summary judgment in a lawsuit involving an insurer's failure to pay a claim under an all-risk insurance policy, the insured bears the initial burden of presenting sufficient facts establishing a *prima facie* case. *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 871 (2003) (citing *Wallis v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 566, 570 (2000)). To satisfy his burden, the insured must show that (1) a loss occurred, (2) the loss resulted from a fortuitous event, and (3) an all-risk policy covering the property was in effect at the time of the loss. *Johnson Press*, 339 Ill. App. 3d at 871. Once the insured establishes a *prima facie* case, the burden shifts to the insurer to affirmatively demonstrate that the loss resulted from a peril expressly excluded from coverage. *United National Insurance Co. v. Faure Brothers Corp.*, 409 Ill. App. 3d 711, 717 (2011). Provisions in an insurance policy that exclude or limit coverage must be construed liberally against the insurer. *Id*.

¶ 17    The trial court granted summary judgment in favor of Economy on the grounds that Gulino could not "prove or set forth a *prima facie* showing" that a breach of contract occurred. The parties agree that an all-risk policy covering Gulino's property was in effect at the time of the loss. However, Economy urges this court to affirm the trial court's judgment because Gulino failed to show that his loss resulted from a collapse as defined in the policy, nor did he show that the loss was fortuitous. The interpretation of an insurance policy is a question of law subject to *de novo* review. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006).

¶ 18    The policy issued by Economy defines collapse as "an abrupt falling down or caving in of a building or any part of a building." The policy does not define "caving in." We give an undefined term its plain and ordinary meaning, which can be derived from a dictionary. *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 74 (2000). Webster's defines "cave" in as "to fall in or down esp[ecially] from being undermined." Webster's Third New International Dictionary 357 (1981). The term connotes the undermining of a structure that can be something less than a complete falling down. The use of the term in the policy also suggests that "falling down" is not the same as "caving in." The terms are separated by the word "or," meaning that each is "separate and distinct" and "must be considered separately as a trigger of coverage." *Zurich Insurance Co. v. Raymark Industries, Inc.*, 145 Ill. App. 3d 175, 188 (1986). Therefore, Economy's policy covers losses that result not only from a complete falling down, but also from the caving in, of a building or any part of a building.

¶ 19    Although the facts undeniably show that Gulino's house or any part of it had not completely fallen down, evidence supports the contention that a portion of the basement ceiling did cave in. Gulino stated that an area of the basement ceiling was collapsed about eight inches. A photograph (labeled A-15 in the appendix to Economy's brief) of the basement ceiling corroborates Gulino's statement and further shows that the ceiling caved in enough to pull a pipe from its brackets. In his complaint, Gulino alleged the collapsed ceiling disabled the heating system, which caused some of the pipes in the rear of the house to freeze and split and resulted in large quantities of water flowing into the basement. Although Economy disputes this cause of the water damage, Gulino at least has alleged sufficient facts to show a loss covered by his insurance policy.

¶ 20    Economy argues that even if the loss resulted from a collapse as defined in the policy, Gulino cannot establish a *prima facie* case because the loss was not fortuitous. It contends that a fortuitous event is one that happens by chance, unexpectedly, or without known cause. In making this argument, Economy presumes that the facts indisputably show that the paper load on the first floor caused the cave-in of the basement ceiling. However, the trial court never made a specific determination as to the cause of the damage. Generally, the question of whether a loss is fortuitous is a legal one for the courts to determine. *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 872 (2003). However, the determination of what occurrence caused the loss is one of fact, and if a genuine issue of material fact exists, summary judgment is not appropriate.

¶ 21    Economy's expert witness Criezis testified in his deposition that the loss was not fortuitous because Gulino accrued piles of paper and debris over "a couple of years" and the

weight of the piles caused the floor joists to bow and bend. He opined that the damage was not sudden or accidental because it occurred over a period of time and the bending of the floor joists under the weight of the debris was expected. He acknowledged, however, that the period of time it would take for the floor joists to pull away from the beam bearings is "related to the load of the paper above." He apparently assumed that the paper load above the area of the ceiling that caved in consisted of the six- to seven-foot piles he had observed on the first floor. Criezis, however, never explicitly stated that he observed the actual paper load above the affected ceiling.

¶ 22     Economy cites to *Johnson Press* as support for its argument. In *Johnson Press*, the plaintiff filed a claim for losses resulting from the June 1, 1998, collapse of the roof of a vacant building it owned. *Id.* at 866. The person responsible for the maintenance of the building acknowledged that he did not go inside the building to examine the premises, but only conducted a "drive by" to check on the structure. He further stated that he did not go up on the roof from 1995 to 1998. *Id.* at 870. Defendant's expert witnesses testified that the interior of the building had fungal growth and severe water stain marks on the roof beams and columns. The walls of the building showed water damage, and water even dripped into the basement. They concluded that the collapse resulted from long-term decay due to plaintiff's failure to maintain the roofing of the building. Furthermore, the dilapidated condition of the building showed that the collapse was not fortuitous but rather was expected. *Id.* at 872. This court determined that the "plaintiff failed to establish a *prima facie* case that the loss was due to a fortuitous event." *Id.*

¶ 23     Unlike the plaintiff in *Johnson*, who presented no evidence to refute the statements of the defendant's expert witnesses, Gulino presented a counteraffidavit in response to the summary judgment motion. Economy argues that the counteraffidavit is " 'rife with conclusions and speculation.' " However, it did not question the sufficiency of the counteraffidavit before the trial court. Therefore, issues regarding the sufficiency of the counteraffidavit are waived on review. *Lang v. Silva*, 306 Ill. App. 3d 960, 971 (1999).

¶ 24     In his counteraffidavit, Gulino stated that up to the time of the collapse he regularly visited his basement two to three times a month and did not notice "settling, cracking, breaking, bending, bowing, bulging or expanding" of the basement ceiling. He also stated that the collapsed joists were located under an area of the foyer approximately four to seven feet from the front door and in this location he had an empty lightweight desk against the wall and a stack of papers only two feet high. He averred that he did not know of the basement ceiling's collapse until February 28, 2006, after his basement had flooded. In his deposition, Criezis acknowledged that the pulling away of the floor joists is "related to the load of the paper above" but he did not state that he observed the actual paper load above the affected ceiling area. Although it may well be the case that the paper load caused the ceiling to cave in gradually over time, given Gulino's statements in his counteraffidavit we find a genuine issue of material fact exists as to the cause of loss.

¶ 25     In determining that Gulino failed to establish a *prima facie* case, the trial court clearly did not find him to be a credible witness. The court stated: "[Y]our position is that [the weight] is less and it would have no bearing whatsoever on the loss sustained because it all of a sudden occurred absent this stuff? The weight has nothing to do with the loss, right? That is

what you want the court to accept?" However, the purpose of a motion for summary judgment is to determine whether a triable question of fact exists, not to try a question of fact. *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 31 (2005). The trial court cannot make credibility determinations or weigh the evidence at the summary judgment stage. *Pietruszynski v. McClier Corp.*, *Architects & Engineers, Inc.*, 338 Ill. App. 3d 58, 67-68 (2003).

¶ 26 Economy contends that even if Gulino established a *prima facie* case, it is entitled to summary judgment because the policy's exclusion for neglect applies. It argues that it should not have to pay for Gulino's loss when he failed to protect his property from the endangerment caused by the weight of the papers and debris in his house. Once the plaintiff establishes a *prima facie* case, the burden shifts to the insurer to prove that an exclusion applies. *Wallis v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 566, 570 (2000). "If the insurer meets this burden through the presentation of undisputed facts, summary judgment is appropriate." *Johnson Press*, 339 Ill. App. 3d at 872. As discussed above, Economy's contention that Gulino's property loss resulted from the weight of the papers is not supported by undisputed facts. The issue of whether the collapse of a portion of the basement ceiling was caused by the weight of the contents is in dispute, as evidenced by Gulino's statements in his deposition and counteraffidavit. The grant of summary judgment in favor of Economy was not proper here.

¶ 27 Gulino also argues that the trial court erred in finding that documents from Home Depot were inadmissible hearsay. He contends that the documents were admissible as business records. Supreme Court Rule 236 requires that the proponent of a business record must show that it was made (1) in the regular course of business, and (2) at or near the time of the event or occurrence. Ill. S. Ct. R. 236 (eff. Aug. 1, 1992); *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 415 (2005). These foundational requirements may be established through testimony of one who is familiar with the business and its mode of operation, or is a custodian of the records. *Id.* Gulino, however, did not provide any evidence establishing a foundation for these documents. The trial court did not err in excluding the documents from the evidence.

¶ 28 For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded for further proceedings.

¶ 29 Reversed and remanded.

¶ 30 PRESIDING JUSTICE QUINN, dissenting:

¶ 31 As the grant of summary judgment in favor of Economy was entirely correct, I respectfully dissent. As the majority point out, the all-risk homeowner's insurance policy issued to Gulino provided that Economy "will pay for sudden and accidental direct physical loss or damage to the property *** except as excluded in Section I–Losses We Do Not Cover." It is well established that " '[t]he natural and ordinary consequences of an act do not constitute an accident.' " *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 266 (2006) (quoting *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 703

(1996)).

¶ 32    In order to withstand a motion for summary judgment in a lawsuit involving an insurer's failure to pay a claim under an all-risk insurance policy, an insured bears the initial burden of presenting sufficient facts establishing a *prima facie* case. *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 871 (2003) (citing *Wallis v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 566, 570 (2000)). This requires a showing that (1) a loss occurred, (2) the loss resulted from a fortuitous event, and (3) an all-risk policy covering the property was in effect at the time of the loss. *Johnson Press*, 339 Ill. App. 3d at 871. Once an insured establishes a *prima facie* case, the burden then shifts to the insurer to affirmatively demonstrate that the loss resulted from a peril expressly excluded from coverage. *United National Insurance Co. v. Faure Brothers Corp.*, 409 Ill. App. 3d 711, 717 (2011). Provisions in an insurance policy that exclude or limit coverage must be construed liberally against the insurer. *Id.*

¶ 33    In this case, both parties acknowledge that a loss occurred and that an all-risk policy was in effect at the time of the loss. Therefore, the issue to be decided is whether plaintiff has made a satisfactory showing that the loss was a "fortuitous event."

¶ 34    Contrary to the majority's assertion, the trial court did not determine what caused the flooding in plaintiff's basement but instead found that plaintiff did not present a *prima facie* case that the loss was the result of a fortuitous event.[2] "Fortuitous" means happening by chance or accident or occurring unexpectedly or without known cause. *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 108-09 (2008). The Restatement of Contracts defines a fortuitous event as an event that, as far as the parties are aware, is dependent on chance. Restatement of Contracts § 291 cmt. a (1932). This court has held that "[a] loss that was, so far as the parties knew, an inevitable certainty at the time of contracting is not fortuitous and will not be covered by the resulting contract." *Johnson Press*, 339 Ill. App. 3d at 887 (citing *Mattis v. State Farm Fire & Casualty Co.*, 118 Ill. App. 3d 612, 621 (1983)). "The determination of whether a loss is fortuitous is a legal question for the court to determine." (Internal quotation marks omitted.) *Cincinnati Insurance*, 387 Ill. App. 3d at 109. While the majority correctly state this rule of law, they treat the issue as one of fact.

¶ 35    In this case, Demetrios Criezis, an architect hired by the village, testified that plaintiff's house was neglected and looked like it had not been cared for in many years. He noted that debris was stacked six to seven feet high throughout the first floor of the house and that it was difficult to even walk past the entryway. This testimony was supported by photographs of the house that were included in the record. Criezis estimated that the load on the floor in the house was 420 pounds per square foot and that a standard home is designed to withstand about 60 pounds per square foot. He concluded that the integrity of the structure had been compromised by the heavy loading of paper and debris on the first floor, resulting in bending

---

[2]In any event, had the trial court determined the cause of the flooding in the basement, it would have been hard-pressed to find a cause more important than Gulino's failure to notify a plumber of the broken pipe for more than six hours.

and bowing of the floor joists over a 6- to 12-month period. Plaintiff himself acknowledged that debris had accumulated over "5 years, more or less" and there was evidence that at least 45,000 pounds of material was in the house. The dilapidated condition of the house, along with the tons of materials stacked inside, demonstrates that the damage to the basement ceiling did not happen by chance or accident.

¶ 36    Even assuming that plaintiff established a *prima facie* case, plaintiff's loss resulted from a peril expressly excluded from the policy. The policy precludes coverage for "neglect by [an insured] to use all reasonable means to save and preserve the property at and after the time of a loss when property is endangered by a peril insured against." Here, it is evident by plaintiff's own admission that his home was filled with papers and debris that had accumulated over "5 years, more or less." Although plaintiff disputes Economy's estimate that the weight of the debris totaled 160,000 pounds, he acknowledged that it weighed at least 45,000 pounds. Criezis testified that the property had been neglected for several years and the village deemed it uninhabitable. It is clear, therefore, that by permitting excessive amounts of debris to accumulate in the house over an extended period of time, plaintiff, failed to "use all reasonable means to save and preserve the property."

¶ 37    Gulino admitted that he never retained anyone to determine the cause of the loss. He also admitted that the ceiling of the basement was "sagging." As the majority point out, Criezis testified that the floor joists' "bending" and "sagging" took place over a period of time which "could have been six months, it could have been at least a year."

¶ 38    The policy explicitly provided that " 'collapse' does not include settling, cracking, *sagging*, bowing, *bending*, leaning, shrinking, bulging or expansion." (Emphases added.) Further, Criezis testified "the integrity of the structure had been compromised by the heavy loading of all the papers stacked above." The majority assert that Gulino filed a counteraffidavit stating "that the affected joists were located under an area of the foyer approximately four to seven feet from the front door. At the time of this incident, this space was occupied only with an empty lightweight desk against the wall and a stack of papers about two feet high."

¶ 39    This counteraffidavit is completely belied by the photos admitted at the hearing on the motion for summary judgment. There is an ocean of debris well in excess of four feet high throughout the foyer. Gulino authenticated these photos in his deposition. It is these photos and Criezis' unrebutted expert testimony that elicited the trial court's comment that "Your position is that [the weight] is less and it would have no bearing whatsoever on the loss sustained because it all of a sudden occurred absent this stuff? The weight has nothing to do with the loss right? That is what you want the court to accept?" The majority assert that Criezis "never explicitly stated that he observed the actual paper load above the affected ceiling." *Supra* ¶ 21. In fact, Criezis testified that there were tons of waste paper throughout the house. In his deposition, Gulino admitted that while he saw village building department personnel in the basement, he never saw them on the first or second floor. The photos support the only reasonable inference–that they were unable to do so because of the debris. As it is self-evident that load-bearing beams run the length of a home, the fact that a small section of the floor above may not be buried in debris would not prevent a beam from separating from the foundation at the joist.

¶ 40    The majority cite *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 31 (2005), for the proposition that "the purpose of a motion for summary judgment is to determine whether a triable question of fact exists, not to try a question of fact." *Supra* ¶ 25. *AYH Holdings* involved claims of professional negligence and breach of fiduciary duty on the part of an insurance broker. The determinative issue was whether one agent was a subagent–a question of fact. Unlike *AYH*, the only issue before the trial court in this case was whether plaintiff made a satisfactory showing that the loss was a "fortuitous event," which is not a question of fact but rather is a legal question for the court to determine. *Cincinnati Insurance*, 387 Ill. App. 3d at 109; *Johnson Press*, 339 Ill. App. 3d at 872. It was also well settled that the definition of "collapse" in an insurance policy is similarly a question of law to be determined by the court. *Indiana Insurance Co. v. Liaskos*, 297 Ill. App. 3d 569, 574 (1998).

¶ 41    In the instant case, Gulino took out a homeowner's insurance policy running from January 22, 2006 through January 22, 2007. Less than five weeks later, Gulino returned home to find water flowing from a pipe in his basement. Gulino did not bother to call a plumber for some 6½ hours. The plumber noticed that the home was full of debris and notified the village of Wilmette. The village subsequently inspected the home and determined it to be uninhabitable. The village had an architect, Criezis, inspect the home. Criezis provided testimony at the hearing on Economy's motion for summary judgment. He testified that the sagging of the floor had occurred for at least one year. Gulino himself testified that his home had been full of debris for "5 years, more or less." The majority hold that the plaintiff has met his burden of showing that the sagging of the joists was fortuitous. This is a question of law, not one of fact. There is no even remotely plausible evidence that the sagging of the joists was caused by anything other than Gulino's pathological hoarding of paper trash over a period of years. Nor will such evidence be provided by plaintiff on remand. As "[t]he natural and ordinary consequences of an act do not constitute an accident" (internal quotation marks omitted) (*Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d at 266), I would affirm the trial court.