# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Nava v. Sears, Roebuck & Co.*, 2013 IL App (1st) 122063

---

| | |
|---|---|
| Appellate Court Caption | ADRIAN NAVA, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant and Cross-Appellee, v. SEARS, ROEBUCK AND COMPANY, Defendant-Appellee and Cross-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-12-2063 |
| Filed | July 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in entering summary judgment for defendant in a class action alleging that defendant violated the Consumer Fraud and Deceptive Business Practices Act by assessing the state sales tax on the full amount of the sales of digital television converter box purchases, even though part of the retail cost of the boxes was subsidized by federal vouchers distributed to consumers, since plaintiff raised a genuine issue of material fact as to each of the elements required to establish a claim under the Act, and defendant's contention that the claim was barred by the voluntary payment doctrine was rejected on the ground that the doctrine is not applicable to claims brought under the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-11800; the Hon. Mary Anne Mason, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Sweetnam LLC, of Northbrook (William M. Sweetnam, of counsel), and Holstein Law Offices LLC, of Chicago (Robert A. Holstein, of counsel), for appellant. |
|---|---|
| | Greenberg Traurig, LLP, of Chicago (Francis A. Citera, Bevin M. Brennan, and Paul A. Del Aguila, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. |
| | Justice Rochford concurred in the judgment and opinion. |
| | Justice Delort specially concurred, with opinion. |

## OPINION

¶ 1 The plaintiff, Adrian Nava, appeals from an order of the circuit court granting summary judgment to the defendant, Sears, Roebuck and Company, on the plaintiff's action under the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 2010)). The plaintiff's claim was based on the defendant's having assessed state sales tax on the entire amount of digital television converter box purchases, despite the fact that part of the retail cost of those devices was subsidized by federal vouchers distributed to consumers. On appeal, the plaintiff argues that summary judgment was improper, because he produced evidence creating at least a genuine question of material fact as to each of the elements of his claim. In addition to contesting the plaintiff's argument on appeal, the defendant filed a cross-appeal to argue in the alternative that summary judgment was appropriate because the sales tax was statutorily proper and that the plaintiff's claim was mooted when it tendered him damages. For the reasons that follow, we dismiss the defendant's cross-appeal, reverse the circuit court's judgment, and remand for further proceedings.

¶ 2 In March 2009, the plaintiff filed a class-action complaint alleging that the defendant had collected sales tax on the full amount of his converter box purchase, including the amount that was subsidized by a federal consumer voucher program. Under the federal program, consumers were provided vouchers that retailers could submit to the federal government for reimbursement of the lesser of $40 or the price of a converter box. The plaintiff alleged that the defendant assessed sales tax on the full gross purchase price of the boxes despite a ruling from the Illinois Department of Revenue (the Department) stating that the federally subsidized amount was not subject to state sales tax. That complaint was replaced by a first amended complaint, which sought damages for violations of the Act, recovery under other legal theories, and attorney fees and costs. In June 2010, the circuit court allowed the plaintiff's claim under the Act to proceed but dismissed the remainder of the first amended complaint. Two days later, the plaintiff filed his second amended complaint, which contained

the same basic factual allegations as his previous complaints. In its answer, the defendant agreed that the Department had issued guidance stating that sales tax should not be collected on the voucher amounts, but it denied that the guidance was applicable "to the extent that [it] conflict[ed] with the applicable state and federal laws." The defendant's answer also raised affirmative defenses of "failure to state a claim" and voluntary payment, but it did not cite any particular Illinois tax laws authorizing its collection of sales tax on the subsidized amount of converter box purchases. During the course of the litigation, the plaintiff withdrew his motion for class certification and elected to proceed in his individual capacity.

¶ 3        Following discovery, the parties filed cross-motions for summary judgment. In its motion and responses, the defendant noted that, without admitting liability, it had tendered $1,000 to the plaintiff to settle his claim, and the defendant argued that the offer rendered the plaintiff's claim moot. The defendant also argued that its collection of sales tax was proper and that the plaintiff had failed to produce evidence to support all of the elements of his claim under the Act. In support of its motion and response, the defendant produced the plaintiff's deposition. At his deposition, the plaintiff said that, when he came home from his shopping trip and examined his receipt, he noticed the sales tax he had been charged for his subsidized converter box purchase at a Sears store. He said that he believed he had been overcharged, especially after comparing his receipt to a receipt for another converter box purchase he made that same day at a different, nearby store. Nine days later, the plaintiff filed his initial class action complaint.

¶ 4        To support his motion for summary judgment and responses, the plaintiff presented the deposition transcript of Eric Fellner, the defendant's manager of sales and use tax compliance. Fellner testified that the defendant sent a memorandum to its Sears stores to provide directions on how to process converter box purchases so that sales tax was assessed on only the net, subsidized price, not the full gross price. He said that the defendant had no way to automate the process of modifying the sales tax to reflect the federal coupons at Sears stores, so the memorandum instructed Sears employees to alter the taxable base manually at the point of sale. He said that any taxes the defendant collected on sales of the boxes were remitted to the State. According to Fellner, the filing of the current lawsuit put him on notice that "the stores may not be using the manual process correctly or in all circumstances." As a result, the defendant changed its policy and collected no sales tax on converter box sales, yet still remitted tax to the State on those purchases. Fellner also explained that K mart stores, which are owned by the same company, charged no sales taxes on converter box purchases, because the manual override process on K mart registers would have been too cumbersome.

¶ 5        In June 2012, the circuit court denied the plaintiff's motion for summary judgment and granted the defendant's. The circuit court noted that the defendant had a policy of not taxing the subsidized portion of converter box purchases and of refunding any taxes mistakenly assessed, and thus that the cause of the plaintiff's damages was his failure to seek a refund, not the defendant's policy. The plaintiff now timely appeals, and the defendant cross-appeals.

¶ 6        Before analyzing the merits of this appeal and cross-appeal, we must discuss three procedural matters. First, we note that the defendant's cross-appeal asks us to affirm the circuit court's summary judgment ruling on alternative grounds. However, as our supreme

court has explained, "[a] party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment." *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386 (1983). Thus, where the circuit court grants summary judgment in favor of a party, that party cannot file a cross-appeal to seek relief from the summary judgment order. *Dowe v. Birmingham Steel Corp.*, 2011 IL App (1st) 091997, ¶ 25. For that reason, we must dismiss the defendant's cross-appeal. We note, however, that we consider the arguments it raises in its cross-appeal in our disposition of the plaintiff's appeal.

¶ 7     The second procedural matter we must address concerns the plaintiff's violation of our supreme court rules governing the preparation of briefs. As the defendant points out in its written argument, the plaintiff submitted no appendix with his opening brief. Illinois Supreme Court Rule 342 (eff. Jan. 1, 2005) requires an appellant to include in its brief an appendix with, among other things, a copy of the judgment appealed from, any findings of fact or memorandum opinions issued by the circuit court, any relevant pleadings, and a complete table of contents of the record on appeal. Ill. S. Ct. R. 342 (eff. Jan. 1, 2005). The plaintiff's brief fails in each of these respects. We remind counsel that our supreme court rules are not advisory suggestions, but, rather, rules to be followed. *E.g.*, *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. Even so, we decline the defendant's request that we dismiss the plaintiff's appeal as a sanction for this violation.

¶ 8     The third procedural matter we must address is the defendant's claim that this matter is moot because it tendered a payment to the plaintiff. We address this claim as a threshold procedural matter because it is well established that "courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). According to the defendant, its tender of $1,000 to the plaintiff afforded him all the direct damages he suffered and covered any reasonable attorney fees incurred in the matter. The plaintiff, however, states that his attorney fees far exceeded this $1,000 threshold. Without a circuit court finding that the plaintiff's claimed fees are unreasonable, and with no circuit court determination that fees should or should not be awarded, we cannot say as a matter of law that the plaintiff would not be entitled to more than $1,000 in attorney fees if his suit were to succeed. Thus, we cannot say that the defendant's tender to the plaintiff mooted this appeal. In so stating, we mean to express no opinion regarding the plaintiff's assertion that his reasonable attorney fees exceeded $1,000.

¶ 9     On the merits, the plaintiff argues that the circuit court erred in granting summary judgment against him. We agree.

¶ 10    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). "The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered." *American Family Mutual Insurance Co. v. Page*, 366 Ill. App. 3d 1112, 1115 (2006). "The propriety of a trial court's decision to grant summary

judgment presents a question of law, which we review *de novo*." *Bigelow Group, Inc. v. Rickert*, 377 Ill. App. 3d 165, 168 (2007). We may affirm the circuit court's grant of summary judgment for any reason that is supported by the record, regardless of whether that reason formed the basis for the trial court's judgment. *Hess v. Flores*, 408 Ill. App. 3d 631, 636 (2011).

¶ 11    We begin with the defendant's argument that the plaintiff's claim, which is based on the premise that the defendant overcharged him for sales tax, fails because Illinois law mandates collection of the taxes at issue.

¶ 12    In its brief, the defendant acknowledges that the Department issued an informational bulletin stating that the subsidized amount of converter box purchases was exempt from state sales tax. The plaintiff relies heavily–indeed almost exclusively–on this bulletin for his argument that the defendant violated the Act. That bulletin, which was issued to "all retailers and consumers of the television converter box," stated, in relevant part:

> "This is to inform you that the $40 coupon issued by the federal government through the TV Converter Box Program to be used to help pay for the cost of a certified converter box is exempt from sales tax."

To consumers, the bulletin gave the following instruction:

> "You will redeem the coupon when you make a purchase of a converter box from a retailer. *** The portion paid with the coupon will be nontaxable."

To retailers, the bulletin instructed:

> "You will report the transaction as any other sale ***. *** Since the federal government is issuing the coupon, the sale is considered a sale to an exempt organization. You will be reimbursed by the federal government for the value of the coupon. Any remaining balance due on the converter box will be reported [as a normally taxable purchase]."

¶ 13    As the defendant points out, the Department's interpretation of the statutes and regulations within its ambit may be entitled to some deference, but it is not binding on this court. See *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202-03 (1989). Thus, the defendant asks us to depart from the Department's interpretation and instead endorse its assessment of sales tax on the full gross sale price of the boxes. To address this issue, we must examine our state's relevant tax laws.

¶ 14    Our state's sales taxation scheme is comprised of two interlocking statutes, the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq*. (West 2010)) and the Use Tax Act (35 ILCS 105/1 *et seq*. (West 2010)). See *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 362-64 (2009) (explaining Illinois's sales tax scheme). ROTA imposes a tax on persons engaged in the business of selling tangible personal property at retail (35 ILCS 120/2 (West 2010)), while the Use Tax Act imposes a tax on the privilege of using tangible personal property, purchased at retail, in this state (35 ILCS 105/3 (West 2010)). *Kean*, 235 Ill. 2d at 362. "A retailer, however, is relieved of the duty of remitting the use tax it collects if it has paid to the Department the [ROTA] tax upon the gross receipts from the same sale." *Kean*, 235 Ill. 2d at 363. Further, ROTA allows retailers to collect reimbursement from purchasers for their sales tax liability, provided that the retailers provide the purchasers refunds of any

overcharges or, failing that, pay any excess to the Department. 35 ILCS 120/2-40 (West 2010). Accordingly, "[i]n the usual case, the use tax is collected from the purchaser by the retailer, who must remit the tax to the [Department]." *Kean*, 235 Ill. 2d at 363. Under this scheme, "although a single sale and purchase at retail of tangible personal property triggers the imposition of two taxes, one on the retailer and one on the purchaser, only one tax is remitted to the Department, and 'the single payment satisfies both taxes.' " *Kean*, 235 Ill. 2d at 363 (quoting *Department of Revenue ex rel. People v. Steinkopf*, 160 Ill. App. 3d 1008, 1014 (1987)).

¶ 15    A retailer's tax liability under both ROTA and the Use Tax Act is computed as a percentage of its gross receipts, or selling price, and the tax rates under those statutes are set at an identical 6.25 percent. *Kean*, 235 Ill. 2d at 362-63. This sales tax does not apply, however, to all receipts on all retail sales. The statutes set forth several exemptions, including a full exemption for government purchases. See 35 ILCS 120/2-5(11) (West 2010) (stating ROTA tax exemption for government purchasers); 35 ILCS 105/3-5(4) (West 2010) (stating Use Tax Act exemption for government purchasers).

¶ 16    Normally, then, the sale of a retail product, such as a digital converter box, would accrue a sales tax of 6.25% of the gross purchase price. Here, however, that purchase price was satisfied in part by a voucher funded by the federal government. The question for us is whether this voucher amount should be considered part of a fully taxable sale to the consumer, or should be considered a tax-exempt partial payment by the federal government. Although the relevant tax statutes themselves are silent regarding taxation of coupon or voucher purchases, the Department has issued a regulation on the matter:

> "If a retailer allows a purchaser a discount from the selling price on the basis of a discount coupon for which the retailer will receive full or partial reimbursement (from a manufacturer, distributor or other source), the retailer incurs Retailers' Occupation Tax liability on the receipts received from the purchaser and the amount of any coupon reimbursement. *** Technically, the coupon issuer *** owes the corresponding Use Tax on the value of the coupon. However, in many cases, the coupon issuer incorporates language into the coupon that requires the bearer *** to assume this Use Tax liability." 86 Ill. Adm. Code 130.2125(b)(2)(A) (2008).

¶ 17    A court will interpret an administrative regulation in the same manner as it would interpret a statute. *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 391 (1990). Thus, our primary aim is to give effect to the drafters' intent, and the best indicator of that intent is the regulation's language, given its plain and ordinary meaning. *Nolan v. Hillard*, 309 Ill. App. 3d 129, 143 (1999). The plain and ordinary meaning of the above-quoted regulation, read in conjunction with the ROTA statute, does not allow taxation of the federally subsidized portion of converter box purchases.

¶ 18    The regulation provides that, in the case where a purchaser uses a coupon or voucher, ROTA tax liability applies to both the customer's payment and to the coupon reimbursement amount. Accordingly, in the typical case where the reimbursing entity is a manufacturer or other taxable entity, this regulation would dictate that ROTA tax be imposed on the full gross purchase price. Here, however, the reimbursing entity is the federal government, which is

exempt from ROTA tax. 35 ILCS 120/2-5(11) (West 2010) (stating ROTA tax exemption for government purchasers). Thus, the ROTA tax cannot be applied to the federal government voucher. Likewise, the regulation states that, typically, the use tax for a coupon or voucher purchase would be applied against the issuer of the voucher. Here, however, the federal government issued the voucher, and it is exempt from the use tax. See 35 ILCS 105/3-5(4) (West 2010). In short, because the federal government is exempt from sales tax, its voucher reimbursement cannot be taxed as would the typical manufacturer's coupon, and, indeed, cannot be taxed at all.

¶ 19    For these reasons, we agree with the plaintiff's premise that the defendant was not statutorily authorized to collect sales tax on the full gross price of the converter boxes. We must next consider whether the plaintiff created at least a genuine issue of material fact as to each of the elements of his claim based on that premise, so that his claim should have survived summary judgment.

¶ 20    In order to succeed on a deceptive practices claim under the Act, a plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (2009). The "deceptive acts or practices" described in the first element includes "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2 (West 2010). As the plaintiff notes in his brief, neither this element nor the second element requires the defendant's intent to deceive–innocent deceptions and omissions violate the Act as well as intentional deceptions. *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805 (1993). Here, we have established that the defendant's practice of collecting sales tax was not statutorily authorized. If, as the plaintiff alleges, the defendant charged a tax neither it nor the plaintiff was bound to pay, it can be found to have engaged in a deceptive act. There is also substantial evidence that the defendant intended that the plaintiff rely on the deception, as the plaintiff's paying the tax was a natural and predictable consequence of its asking the plaintiff to do so.

¶ 21    On the third element, the parties do not dispute that the defendant's actions related to trade or commerce. On the fourth element, the record establishes that the plaintiff suffered actual damage in the form of his excessive sales tax payment. That leaves only the fifth element, which requires that the plaintiff's damage have been caused by the deception. In order to establish this causative link, a plaintiff must show that he was actually deceived by the defendant's deception and that the deception proximately caused his damages. *De Bouse*, 235 Ill. 2d at 554. Ordinarily, the question of proximate cause is one of fact for the jury, but it may be determined as a matter of law where the facts alleged show that the plaintiff would never be entitled to recover. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257-58 (2004).

¶ 22    Here, the plaintiff testified that, at the time he purchased the converter box from the defendant, he was unaware that he was being overcharged. Although the defendant disputes the credibility of the plaintiff's assertion, we do not resolve such credibility questions at the summary judgment stage. See *Gulino v. Economy Fire & Casualty Co.*, 2012 IL App (1st) 102429, ¶ 25 ("The trial court cannot make credibility determinations or weigh the evidence

at the summary judgment stage."). The plaintiff's testimony creates at least a genuine issue of fact regarding whether the defendant's actions caused his injury.

¶ 23    The defendant also notes, as the circuit court noted, that the plaintiff never sought a refund, but instead opted to file suit against the defendant within two weeks of his converter box purchase. Based on this fact, the circuit court concluded that the real proximate cause of the plaintiff's injury was his refusal to seek a refund, not the defendant's deceptive act. The circuit court may have been correct that the defendant's failure to seek a refund caused his injury, but that revelation does not mean that the defendant's actions were not also a cause of the injury. Indeed, in order to suffice as proximate cause, an action " 'need not be the only cause, nor the last or nearest cause' " of a plaintiff's injury. *Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114, ¶ 21 (quoting Illinois Pattern Jury Instructions, Civil, No. 15.01 (2011)). The plaintiff has presented some evidence to support his claim that the defendant's actions produced his injury, even if it could be said that his failure to seek a refund also produced his injury. Thus, we conclude that the plaintiff has created at least a genuine issue of material fact as to each of the elements of his claim under the Act.

¶ 24    Notwithstanding the above, the defendant argues that the plaintiff's claim is precluded by the voluntary payment doctrine. Under that doctrine, "absent fraud, misrepresentation or mistake of fact, money that is voluntarily paid under a claim of right to the payment and with full knowledge of the facts by the payer cannot be recovered unless the payment was made as a result of compulsion." *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 587 (2004). As applied to tax disputes, the voluntary payment doctrine provides that "a retailer who collected [tax] which was later held to have been erroneously imposed [is] not subject to a suit for refund from its customers if the customers paid the tax voluntarily and if the retailer had remitted the tax to the State." *Lusinski v. Dominick's Finer Foods, Inc.*, 136 Ill. App. 3d 640, 643 (1985). However, although the voluntary payment doctrine bars suits against retailers for tax refunds, it does not apply where the payment was procured by deception or fraud. See *Jenkins v. Concorde Acceptance Corp.*, 345 Ill. App. 3d 669, 675 (2003). Indeed, for that reason, and because the doctrine cannot apply to impede causes of action based on statutorily defined public policy, this court has held that it should not apply to claims brought under the Act. *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 805 n.2 (2007). Accordingly, the defendant cannot invoke the voluntary payment doctrine to defeat the plaintiff's claim here.

¶ 25    For the foregoing reasons, we conclude that the circuit court erred in granting the defendant summary judgment on his claims under the Act. We therefore reverse the circuit court's judgment and remand the matter for further proceedings.

¶ 26    Reversed and remanded.

¶ 27    JUSTICE DELORT, specially concurring.

¶ 28    I concur with the result reached by the panel. I write separately, however, to explain my own concerns about two issues: one procedural, one substantive.

¶ 29    As noted above, the appellant's brief contains neither a copy of the judgment being appealed nor an index to the 9-volume, 2,000-page record. *Supra* ¶ 7. Both are required by

our rules, and their omission is hardly a procedural technicality that can be easily ignored. When appellate justices receive a new case for decision, many will open the appellant's brief to the back to first read the trial court's judgment order. When the appellant omits this appendix, but merely cites the judgment's location in the record by volume and page, the justices must sift through an often-voluminous record to first locate the appropriate volume, and then find the exact page.

¶ 30    The appellee noted these omissions and asked us to dismiss the appeal because of the appellant's violations of Supreme Court Rules 341 and 342. However, rather than filing a motion requesting that relief, or asking us to strike the brief and make the appellant go through the time and expense of doing it right, the appellee placed the dismissal request in its own brief, and then proceeded to address the full merits of the case. The appellee also prepared the index on its own and included it, along with copies of the trial judge's oral and written rulings and hundreds of pages of other materials duplicated from the record, in a telephone-book-sized appendix. Having done that, it became extraordinarily unlikely we would have dismissed the appeal, since we had jurisdiction and the case was fully briefed on the merits.

¶ 31    In its reply brief, the appellant does not even feign an apology, and instead impugns the appellee's legitimate complaints as an attempt at "leverage." He makes short shrift of his own brief's glaring omissions by noting that his brief contains numerous citations to the record. That, however, is not the point. Justices may wish to locate material in the record that neither party cites. The index helps them do exactly that. We understand when persons representing themselves in small claims cases do not exhibit punctilious compliance with our rules. It is another thing, altogether, when litigants in chancery class action cases, who claim they are owed hundreds of thousands of dollars in attorney fees, cavalierly ignore the requirements for the structure and content of appellate briefs.

¶ 32    Because cases are not assigned to a panel for disposition until they are fully briefed, it is unlikely that a justice will see a deficient appellant's brief until the case is ready for decision. See Ill. App. Ct., First Dist., R. 2, § I(B) (July 1, 2008). Accordingly, an appellee is well-advised to file a motion to strike a noncompliant brief, including therein a request that the appellant be required to file a substitute brief that complies with our rules.

¶ 33    On the merits, I agree that the record contains material issues of genuine fact sufficient to prevent Sears from obtaining victory on the Consumer Fraud Act claim through summary judgment. However, the evidence is rather thin, particularly on the element of whether the plaintiff's damages were actually caused by deception. *Supra* ¶ 22. The circumstantial evidence in the record points strongly to the conclusion that the plaintiff was not actually deceived, because he knew or should have known that his milk run purchases of converter boxes at various retailers were merely shams to establish his standing to bring a lucrative class action lawsuit.