# Illinois Official Reports

## Supreme Court

*McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626

| | |
|---|---|
| Caption in Supreme Court: | DESTIN McINTOSH, Appellee, v. WALGREENS BOOTS ALLIANCE, INC., Appellant. |
| Docket No. | 123626 |
| Filed | June 20, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Diane J. Larsen, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Kenneth M. Kliebard, Gregory T. Fouts, and Kristal D. Petrovich, of Morgan, Lewis & Bockius LLP, of Chicago, and David B. Salmons and James D. Nelson, of Morgan, Lewis & Bockius LLP, of Washington, D.C., for appellant. |
| | Todd L. McLawhorn and Joseph J. Siprut, of Siprut PC, of Chicago, for appellee. |
| | Robert M. Andalman and Rachael Blackburn, of A&G Law LLC, of Chicago, for *amici curiae* Taxpayers' Federation of Illinois *et al.* |

Justices      JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

**OPINION**

¶ 1      Plaintiff Destin McIntosh filed a class action complaint against defendant Walgreens Boots Alliance, Inc. (Walgreens). The complaint alleged that Walgreens violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2014)) by unlawfully collecting a municipal tax imposed by the City of Chicago (City) on purchases of bottled water that were exempt from taxation under the City ordinance.

¶ 2      The circuit court of Cook County dismissed the action under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2014)), on the ground that McIntosh's claim was precluded under the voluntary payment doctrine, which provides that money voluntarily paid with full knowledge of the facts cannot be recovered on the ground that the claim for payment was illegal. The appellate court reversed, holding that the voluntary payment doctrine did not bar McIntosh's claim because he had pleaded that the unlawful collection of the bottled water tax was a deceptive act under the Consumer Fraud Act. 2018 IL App (1st) 170362. We allowed Walgreens' petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Apr. 1, 2018)). For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                        I. BACKGROUND

¶ 4      Since 2008, the City has levied a five-cent tax on the purchase of bottled water. Chicago Municipal Code § 3-43-030 (added Nov. 13, 2007). Under the ordinance, the buyer is ultimately liable to the City for payment of the bottled water tax. *Id.* § 3-43-040 (added Nov. 13, 2007). The retail seller is required to include the bottled water tax in the sale price. *Id.* § 3-43-050 (added Nov. 13, 2007). The bottled water wholesaler collects the tax from the retailer and remits the tax to the City. *Id.*

¶ 5      The ordinance defines the term "bottled water" as "all water which is sealed in bottles offered for sale for human consumption" but excludes any beverage that is defined as a "soft drink" under a separate City ordinance imposing a tax on soft drinks. *Id.* § 3-43-020 (added Nov. 13, 2007). Under that ordinance, the term "soft drink" has the meaning set forth in section 2-10 of the Illinois Retailers' Occupation Tax Act (*id.* § 3-45-020 (amended Nov. 16, 2011)), which in turn states that "soft drinks" are defined as "non-alcoholic beverages that contain natural or artificial sweeteners" (35 ILCS 120/2-10 (West 2014)).

¶ 6      A guide to the bottled water tax, published by the City's department of revenue, provides examples of the types of bottled water that are excluded from the tax, including (1) any beverage that qualifies as a "soft drink" under the Chicago Soft Drink Tax Ordinance; (2) Pedialyte; (3) Gatorade; (4) Vitamin Water; (5) Sobe Life Water; (6) Propel Fitness Water;

- 2 -

(7) Water Joe; (8) Perrier, seltzer water, club soda, or tonic water; (9) mineral water as defined by the Food and Drug Administration; (10) distilled water; (11) other similar products that have carbonation, flavoring, vitamins, caffeine, or nutritional additives; and (12) water provided by delivery services that is in a reusable container not sold with the water. See Chicago Department of Revenue, *Chicago Bottled Water Tax Guide*, https://www.chicago.gov/content/dam/city/depts/rev/supp_info/TaxSupportingInformation/BottledWaterTax Guide.pdf (last visited Apr. 25, 2019) [https://perma.cc/99AY-WWFN].

¶ 7    In 2016, McIntosh filed a class action complaint, asserting that Walgreens had violated the Consumer Fraud Act by collecting the bottled water tax on exempt purchases. The complaint alleged that McIntosh had purchased bottled sparkling water on multiple occasions from several specific Walgreens locations in the city during 2015, and he believed that he was charged the bottled water tax on those occasions. According to the complaint, McIntosh did not know that he had been improperly charged for the bottled water tax until November 2015, when several Chicago news outlets reported that Walgreens was charging the bottled water tax on sparkling water sales that should have been exempt. The complaint further alleged that those reports quoted a Walgreens spokesperson as saying that the company had corrected the issue and that their stores were charging the correct tax on these items.

¶ 8    McIntosh's complaint asserted a claim under the Consumer Fraud Act on behalf of himself and all other similarly situated individuals who were charged the bottled water tax on exempt purchases from a Walgreens store in the city. In particular, the complaint alleged that Walgreens represented to buyers of bottled water that the total price "included the tax that was required and allowable by law." According to the complaint, Walgreens knowingly overcharged taxes to McIntosh and other class members by improperly charging the bottled water tax on retail sales of carbonated, flavored, and mineral water. The complaint further asserted that the overcharge was inconspicuous because only a close inspection and investigation of the applicable tax rates and the specific tax charged by Walgreens would reveal the overcharge. In addition, the complaint alleged that Walgreens' conduct constituted a deceptive and unfair practice under the Consumer Fraud Act, which took place in the course of trade or commerce, and that Walgreens intended that the purchasers of bottled water rely on its deceptive and unfair practice, which proximately caused them to suffer actual damages.

¶ 9    Walgreens moved to dismiss the complaint under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)), asserting that the claim was barred by the voluntary payment doctrine. The motion was supported by the affidavit of Michelle Vartanian, Walgreens' manager for sales and use tax compliance. Vartanian's affidavit averred that, in 2015, Walgreens customer receipts listed the bottled water tax as a separate line item, along with the amount of the tax, for purchases upon which the bottled water tax was charged. Vartanian further averred that Walgreens remitted the bottled water tax to the City in one of two ways: either by making monthly payments to the City for water shipped from a central Walgreens warehouse or by paying the tax to a vendor for water shipped from the vendor, which was responsible for remitting the tax to the City.

¶ 10    McIntosh opposed the motion to dismiss, claiming only that the voluntary payment doctrine did not apply to claims brought under the Consumer Fraud Act. He did not file an affidavit or other evidentiary matter to contradict the averments in Vartanian's affidavit. The circuit court granted Walgreens' motion and dismissed the action with prejudice.

¶ 11        McIntosh appealed. The appellate court initially determined that the voluntary payment doctrine does not bar a Consumer Fraud Act claim that is predicated on a deceptive act. 2018 IL App (1st) 170362, ¶ 17. The appellate court further held that McIntosh had sufficiently alleged that Walgreens engaged in deceptive conduct in violation of the Consumer Fraud Act by collecting the bottled water tax on purchases that were exempt from the tax. *Id.* ¶¶ 19-20. Accordingly, the appellate court reversed the dismissal of McIntosh's complaint. *Id.* ¶ 20.

¶ 12        Walgreens appeals to this court. We also allowed the Taxpayers' Federation of Illinois, the Illinois Retail Merchants Association, and the Chicagoland Chamber of Commerce to file a brief as *amici curiae* in support of Walgreens' position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 13                                II. ANALYSIS

¶ 14        Walgreens argues that the appellate court erred in reversing the dismissal of McIntosh's complaint under section 2-619(a)(9) of the Code. Specifically, Walgreens contends that the appellate court's decision effectively nullifies the voluntary payment doctrine. Walgreens further contends that the policy underlying the voluntary payment doctrine applies to this case and that the facts alleged in the complaint are insufficient to invoke the fraud exception to the doctrine.

¶ 15        McIntosh urges that the appellate court's judgment be affirmed, asserting that the voluntary payment doctrine does not apply to claims brought under the Consumer Fraud Act. McIntosh alternatively contends that the circuit court's dismissal of his complaint was erroneous because he sufficiently pleaded that his claim falls within the doctrine's exception for fraud.

¶ 16        Section 2-619(a)(9) of the Code permits dismissal of an action where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014). The phrase "affirmative matter" refers to a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999) (citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994)). A motion to dismiss under section 2-619 admits well-pleaded facts but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts alleged in the complaint. *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 21. In addition, a defendant does not admit the truth of any allegations in the complaint that may touch on the affirmative matters raised in the section 2-619(a)(9) motion to dismiss. *Barber Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073 (1992). Where a defendant presents affidavits or other evidentiary matter supporting the asserted defense, the burden shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

¶ 17        In reviewing a dismissal under section 2-619(a)(9), this court determines whether there exists a genuine issue of material fact that should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Better Government Ass'n*, 2017 IL 121124, ¶ 21. The propriety of a dismissal under section 2-619(a)(9) of the Code presents a question of law that we review *de novo*. *Id.*

## A. The Voluntary Payment Doctrine in Consumer Fraud Cases

¶ 19    We begin by considering McIntosh's assertion that the voluntary payment doctrine does not apply to cases brought under the Consumer Fraud Act. In essence, McIntosh contends that statutory consumer fraud claims are categorically exempt from the voluntary payment doctrine. We do not agree.

¶ 20    The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). Section 2 of the statute provides that it is unlawful to engage in

> "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2014).

¶ 21    To sufficiently plead a cause of action based on a violation of section 2, a plaintiff must allege the following: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002). The plaintiff need not allege an intent to deceive on the part of the defendant, and an innocent misrepresentation may be actionable under the Consumer Fraud Act. *Cripe v. Leiter*, 184 Ill. 2d 185, 191 (1998). Section 2 requires, however, that the misrepresentation must relate to a material fact. 815 ILCS 505/2 (West 2014).

¶ 22    The common-law voluntary payment doctrine embodies the ancient and "universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 541 (1908); see also *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 298 (2006); *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 27-28 (2005); *Illinois Graphics*, 159 Ill. 2d at 497; *Kanter & Eisenberg v. Madison Associates*, 116 Ill. 2d 506, 512 (1987); *Freund v. Avis Rent-A-Car System, Inc.*, 114 Ill. 2d 73, 79 (1986); *Getto v. City of Chicago*, 86 Ill. 2d 39, 48-49 (1981); *Yates v. Royal Insurance Co.*, 200 Ill. 202, 206-07 (1902); *Elston v. City of Chicago*, 40 Ill. 514, 518-19 (1866).

¶ 23    To avoid application of this long-standing doctrine, it is necessary to show not only that the claim asserted was unlawful but also that the payment was not voluntary, such as where there was some necessity that amounted to compulsion and payment was made under the influence of that compulsion. *King*, 215 Ill. 2d at 28, 30; *Illinois Graphics*, 159 Ill. 2d at 497; *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 393-94 (1989); *Freund*, 114 Ill. 2d at 79; *Getto*, 86 Ill. 2d at 49; *Illinois Glass Co.*, 234 Ill. at 541; *Yates*, 200 Ill. at 207.

¶ 24    In addition to compulsion or duress, other recognized exceptions to the voluntary payment doctrine include fraud or misrepresentation or mistake of a material fact. *Vine Street Clinic*, 222 Ill. 2d at 298; *King*, 215 Ill. 2d at 30; *Illinois Graphics*, 159 Ill. 2d at 497; *Freund*, 114 Ill. 2d at 79; *Getto*, 86 Ill. 2d at 49; *Illinois Glass Co.*, 234 Ill. at 541; *Yates*, 200 Ill. at 207.

¶ 25     The voluntary payment doctrine is a common-law rule of general application, including cases involving the erroneous collection of a tax. *Yates*, 200 Ill. at 206; see also *Freund*, 114 Ill. 2d at 79-84; *Getto*, 86 Ill. 2d at 48-53; *Adams v. Jewel Cos.*, 63 Ill. 2d 336, 343-44 (1976); *Hagerty v. General Motors Corp.*, 59 Ill. 2d 52, 59-60 (1974). Generally, taxes paid voluntarily though erroneously may not be recovered without statutory authorization. *Freund*, 114 Ill. 2d at 79; *Getto*, 86 Ill. 2d at 48; *Adams*, 63 Ill. 2d at 343-44; *Hagerty*, 59 Ill. 2d at 59. This rule also applies to tax payments made to an intermediary such as a retailer. *Freund*, 114 Ill. 2d at 79; *Adams*, 63 Ill. 2d at 343-44; *Hagerty*, 59 Ill. 2d at 59-60.

¶ 26     In support of his assertion that the voluntary payment doctrine does not apply to claims brought under the Consumer Fraud Act, McIntosh relies primarily on the appellate court's decisions in *Nava v. Sears, Roebuck & Co.*, 2013 IL App (1st) 122063, *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797 (2007), and *Flournoy v. Ameritech*, 351 Ill. App. 3d 583 (2004). We find, however, that these cases do not establish a categorical exemption from the voluntary payment doctrine for claims brought under the Consumer Fraud Act.

¶ 27     In *Flournoy*, the plaintiff brought an action under the Consumer Fraud Act against the defendant, a provider of telephone service to prison inmates. *Flournoy*, 351 Ill. App. 3d at 584-85. The plaintiff alleged that the defendant engaged in a deceptive course of conduct by offering telephone service under a specified rate structure and then fraudulently collecting multiple fees and surcharges to reinitiate calls that had been prematurely and deliberately terminated by the defendant. *Id.* at 586-87. The gravamen of the plaintiff's claim was that the defendant had misrepresented the true rate of the telephone service by terminating calls prematurely and imposing duplicate fees when the plaintiff placed the same call again. The appellate court held that the plaintiff's claim was not barred by the voluntary payment doctrine because he had alleged a deceptive practice under the Consumer Fraud Act that was "in the nature of fraud." *Id.* at 587. The decision in *Flournoy* is a straightforward application of the fraud exception to the voluntary payment doctrine. As such, it does not support the assertion that statutory consumer fraud claims are categorically exempt from the voluntary payment doctrine.

¶ 28     In *Nava*, the plaintiff brought suit under the Consumer Fraud Act, alleging that the defendant had improperly assessed state sales taxes on the entire retail sale price of digital television converter boxes despite the fact that a portion of the sale price was subsidized by a federal consumer voucher program. *Nava*, 2013 IL App (1st) 122063, ¶ 1. In opposing the plaintiff's claim, the defendant asserted that the plaintiff's claim was barred by the voluntary payment doctrine. *Id.* ¶ 2. The appellate court rejected the defendant's argument that the plaintiff's claim was barred by the voluntary payment doctrine, noting that the doctrine is inapplicable if the payment was procured by fraud or deception. *Id.* ¶ 24. The appellate court further observed that the voluntary payment doctrine could not be applied as a defense in "causes of action based on statutorily defined public policy" and "should not apply to claims brought under the [Consumer Fraud] Act." *Id.* As support for this proposition, the *Nava* court cited only *dicta* contained in a footnote in the *Ramirez* decision. *Id.* In that footnote, the *Ramirez* court concluded that the voluntary payment doctrine could not be applied to the

plaintiff's claims for excessive copying charges because to do so "would violate the fairness requirements of the Consumer Fraud Act." *Ramirez*, 371 Ill. App. 3d at 805 n.2.[1]

¶ 29　We find nothing in either *Nava* or *Ramirez* that lends support to McIntosh's argument that claims brought under the Consumer Fraud Act are categorically exempt from the voluntary payment doctrine. The "public policy" referenced by *Nava* amounts to nothing more than recognition that a payment charged and collected in contravention of the Consumer Fraud Act is unlawful. Merely characterizing an act or practice as illegal is insufficient to defeat application of the doctrine. *King*, 215 Ill. 2d at 33. Indeed, the voluntary payment doctrine specifically applies where the payment sought to be recovered was obtained illegally. *Id.* This court has repeatedly rejected an argument that the voluntary payment doctrine cannot be used to defeat public policy in circumstances where the payment was not the result of fraud or a misrepresentation of fact. *Id.* at 34-35; see also *Vine Street Clinic*, 222 Ill. 2d at 298-99.

¶ 30　Moreover, McIntosh's assertion that Consumer Fraud Act claims are exempt from the voluntary payment doctrine is in direct conflict with well-established principles that govern a legislative abrogation of a common-law rule. Common-law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision. *Rush University Medical Center v. Sessions*, 2012 IL 112906, ¶ 16. A legislative intent to alter or abrogate the common law must be plainly and clearly stated. *Id.* As a consequence, "Illinois courts have limited all manner of statutes in derogation of the common law to their express language, in order to effect the least—rather than the most—alteration in the common law." *Id.* (citing *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69 (2004) (collecting cases)).

¶ 31　Nothing in the language of the Consumer Fraud Act reflects a legislative intent to alter the voluntary payment doctrine or its applicability to claims brought under the statute. Therefore, it cannot be said that the Consumer Fraud Act abrogates the voluntary payment doctrine. To the extent that *Nava* and *Ramirez* suggest otherwise, they are overruled. Accordingly, we reject McIntosh's assertion that statutory consumer fraud claims are categorically exempt from the voluntary payment doctrine.

¶ 32　　　　　　　　　B. Application of the Voluntary Payment Doctrine

¶ 33　Having determined that the voluntary payment doctrine applies to statutory consumer fraud claims, we next consider whether McIntosh's complaint pled sufficient facts to defeat its application. In doing so, we initially reject McIntosh's assertion that Walgreens has forfeited any pleading challenges to his allegations of fraud. This argument is without merit because a motion to dismiss under section 2-619(a)(9) does not admit conclusions of law or conclusory factual allegations (*Better Government Ass'n*, 2017 IL 121124, ¶ 21), nor does it admit the truth of allegations that relate to the affirmative matters asserted as a defense to the claim (*Barber Colman Co.*, 236 Ill. App. 3d at 1073-74).

¶ 34　In tax cases, the voluntary payment doctrine precludes recovery of an erroneous tax that was paid voluntarily and remitted by the retailer to the taxing authority. *Freund*, 114 Ill. 2d at

---

[1]As the appellate court in this case recognized, the footnote in *Ramirez* does not accurately reflect the law. 2018 IL App (1st) 170362, ¶ 17. A claim premised on an unfair practice is not the equivalent of a claim based on fraud or deception. See *Jenkins v. Concorde Acceptance Corp.*, 345 Ill. App. 3d 669, 677 (2003), *aff'd sub nom. King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1 (2005).

79; *Adams*, 63 Ill. 2d at 343-44; *Hagerty*, 59 Ill. 2d at 59-60; *Yates*, 200 Ill. at 207; see also *Lusinski v. Dominick's Finer Foods, Inc.*, 136 Ill. App. 3d 640, 643 (1985); *Isberian v. Village of Gurnee*, 116 Ill. App. 3d 146, 150-51 (1983). In the absence of a statute or unjust enrichment by a seller who retains an erroneously collected tax, a plaintiff may not recover against the seller for the overpayment of taxes that have been remitted to the taxing authority. *Freund*, 114 Ill. 2d at 79; *Adams*, 63 Ill. 2d at 343-44; *Hagerty*, 59 Ill. 2d at 60. To avoid application of the doctrine, a plaintiff must allege facts that bring the claim within one of the recognized exceptions such as necessity or compulsion, fraud, or misrepresentation or mistake of fact. *Geary*, 129 Ill. 2d at 393-94; *Freund*, 114 Ill. 2d at 79; *Adams*, 63 Ill. 2d at 343-44 (1976); *Hagerty*, 59 Ill. 2d at 59-60.

¶ 35    McIntosh does not argue that he was compelled to pay the bottled water tax because the purchase of carbonated or flavored water was a necessity and could not have been obtained from any other source without paying the municipal tax. See *Geary*, 129 Ill. 2d at 402-03 (applying the necessity exception to the purchase of tampons and sanitary napkins); *Getto*, 86 Ill. 2d at 49-51 (same with regard to telephone service); *Ross v. City of Geneva*, 71 Ill. 2d 27, 34-35 (1978) (same with regard to electrical service). Instead, he contends that his claim falls within the exception for fraud. McIntosh argues that Walgreens knowingly overcharged him by misrepresenting the legality of the bottled water tax that was charged on exempt purchases. He predicates this argument on the contention that the receipt issued by Walgreens for such an exempt purchase constitutes a representation that the tax was required by the ordinance. We do not agree.

¶ 36    Under Illinois law, a receipt constitutes *prima facie* evidence as to payment of the amount reflected in the receipt. *Mendelson v. Flaxman*, 32 Ill. App. 3d 644, 648 (1975). As such, a receipt documents the fact of the transaction and raises a rebuttable presumption that the specified payment was made. See *id.* It is recognized that an accurate receipt is one of the factors that indicates there was no deception by the retailer. *Lusinski*, 136 Ill. App. 3d at 644; *Isberian*, 116 Ill. App. 3d at 151; *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 210 (1997). Where the nature and amount of a charge is fully disclosed, the plaintiff cannot successfully assert that he or she was operating under a mistake of fact with regard to the charge. See *King*, 215 Ill. 2d at 32; *Freund*, 114 Ill. 2d at 82; *Lusinski*, 136 Ill. App. 3d at 644; *Isberian*, 116 Ill. App. 3d at 151; *Tudor*, 288 Ill. App. 3d at 210.

¶ 37    In this case, Vartanian's affidavit averred that the bottled water tax and the amount of the tax was specifically listed on Walgreens receipts and that the bottled water tax it collected was remitted to the City. McIntosh does not dispute that the Walgreens receipts accurately reflected that the bottled water tax was charged on exempt purchases, nor does he contend that Walgreens did not remit the bottled water tax it collected on those purchases to the City or was unjustly enriched by the erroneous collection of the tax. McIntosh has not pointed to any information set forth on the receipt that was factually inaccurate. As a consequence, McIntosh has not alleged any misrepresentation of a material fact as the basis for his claim under section 2 of the Consumer Fraud Act. See 815 ILCS 505/2 (West 2014).

¶ 38    Rather, McIntosh concedes that the bottled water tax was disclosed on the receipts issued for exempt purchases. He argues, however, that the disclosure of the tax on the receipt operates as a representation as to the legality of its collection of the bottled water tax. Specifically, McIntosh asserts that the disclosure on the receipt constituted a representation that "the total

price [of the purchase] included the tax required and allowable by law." This allegation, however, is insufficient to sufficiently plead a statutory consumer fraud claim.

¶ 39   It is understood that misrepresentations or mistakes of law cannot form the basis of a claim for fraud. *Yates*, 200 Ill. at 206; *Elston*, 40 Ill. at 518-19; *Kupper v. Powers*, 2017 IL App (3d) 160141, ¶ 53; *McCarthy v. Pointer*, 2013 IL App (1st) 121688, ¶ 17; *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 933 (2003). An erroneous conclusion of the legal effect of known facts constitutes a mistake of law and not of fact. *Purvines v. Harrison*, 151 Ill. 219, 223 (1894); *The Hartford v. Doubler*, 105 Ill. App. 3d 999, 1001 (1982). Because all persons are presumed to know the law, a mistake or misrepresentation of law will not avoid application of the voluntary payment doctrine. *Illinois Graphics*, 159 Ill. 2d at 491; *Commercial National Bank of Peoria v. Bruno*, 75 Ill. 2d 343, 350-51 (1979); *Groves v. Farmers State Bank of Woodlawn*, 368 Ill. 35, 47 (1937); *Illinois Glass Co.*, 234 Ill. at 546; *Yates*, 200 Ill. at 206; *Elston*, 40 Ill. at 518-19. Where a misrepresentation of law is discoverable by the plaintiff in the exercise of ordinary prudence, it cannot form the basis of an action for fraud. See *Kupper*, 2017 IL App (3d) 160141, ¶ 53; *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805 (1993); see also *Capiccioni*, 339 Ill. App. 3d at 933; *Stichauf v. Cermak Road Realty*, 236 Ill. App. 3d 557, 568 (1992).

¶ 40   As noted above, McIntosh asserts that the disclosure of the bottled water tax on the receipt constituted a representation that "the total price [of the purchase] included the tax required and allowable by law." Such a representation would be one of law, constituting Walgreens' understanding and interpretation of what the bottled water tax ordinance required. See *Purvines*, 151 Ill. at 223; *The Hartford*, 105 Ill. 2d at 1001. Because McIntosh is charged with knowledge of the law, he cannot claim to have been deceived by the information disclosed on the receipt. McIntosh had the ability to investigate the ordinance to determine if the bottled water tax applied to his purchases of carbonated or flavored water. He has not alleged that Walgreens had superior access to the information set forth in the bottled water tax ordinance or that he could not have discovered what the ordinance required through the exercise of ordinary prudence. See *Kupper*, 2017 IL App (3d) 160141, ¶ 53; *Randels*, 243 Ill. App. 3d at 805; *Capiccioni*, 339 Ill. App. 3d at 933; *Stichauf*, 236 Ill. App. 3d at 568. Therefore, the alleged misrepresentation asserted by McIntosh cannot form the basis of a claim for statutory consumer fraud.

¶ 41   Because McIntosh's complaint failed to allege sufficient facts to assert the fraud exception to the voluntary payment doctrine, the circuit court properly dismissed his complaint. The appellate court erred in holding otherwise.

¶ 42                           III. CONCLUSION

¶ 43   In sum, the voluntary payment doctrine applies to claims brought pursuant to the Consumer Fraud Act, and McIntosh's complaint failed to allege sufficient facts to establish the fraud exception to the doctrine. For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

¶ 44   Appellate court judgment reversed.

¶ 45   Circuit court judgment affirmed.

¶ 46    JUSTICE KILBRIDE, dissenting:

¶ 47    This court is tasked with determining whether the voluntary payment doctrine applies as an affirmative defense to claims alleging violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2014)). I agree with the majority that, generally, "taxes paid voluntarily though erroneously may not be recovered without statutory authorization" and that the voluntary payment rule "also applies to tax payments made to an intermediary such as a retailer," where taxes were mistakenly collected and remitted to the taxing body. *Supra* ¶ 25 (citing *Yates v. Royal Insurance Co.*, 200 Ill. 202, 206 (1902), *Freund v. Avis Rent-A-Car System, Inc.*, 114 Ill. 2d 73, 79 (1986), *Getto v. City of Chicago*, 86 Ill. 2d 39, 48 (1981), *Adams v. Jewel Cos.*, 63 Ill. 2d 336, 343-44 (1976), and *Hagerty v. General Motors Corp.*, 59 Ill. 2d 52, 59-60 (1974)). None of those cases, however, involved claims brought under the Consumer Fraud Act. I believe that the voluntary payment doctrine should not be applied to impede causes of action based on statutorily defined public policy and, therefore, should not apply to claims brought under the Consumer Fraud Act.

¶ 48    This court has expressly recognized that "[t]he Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. It is to be liberally construed to effectuate its purpose." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). This public policy was established by the legislature in enacting the Consumer Fraud Act. The voluntary payment doctrine affirmative defense is wholly incompatible with the broad protections the legislature intended to provide by enacting the Consumer Fraud Act.

¶ 49    While the ancient voluntary payment doctrine has been described by this court as a " 'universally recognized rule' " (*supra* ¶ 22 (quoting *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 541 (1908))), other courts have described it as a "harsh" doctrine (*Getty Oil Co. v. United States*, 767 F.2d 886, 889 (Fed. Cir. 1985)). The common-law voluntary payment doctrine was established in England in the early 1800s (see *Bilbie v. Lumley* (1802) 102 Eng. Rep. 448; 2 East 469) and, as acknowledged by the majority, has long been recognized in Illinois (*supra* ¶ 22).

¶ 50    More recently, however, the once well-settled voluntary payment doctrine has become somewhat unsettled, commensurate with the rise of consumer protection statutes. See, *e.g.*, Colin E. Flora, *Practitioner's Guide to the Voluntary Payment Doctrine*, 37 S. Ill. U. L.J. 91 (2012); John E. Campbell & Oliver Beatty, *Huch v. Charter Communications, Inc.: Consumer Prey, Corporate Predators, and a Call for the Death of the Voluntary Payment Doctrine Defense*, 46 Val. U. L. Rev. 501, 518-19 (2012) (noting that over 60% of common-law countries have abolished the voluntary payment doctrine, including the United Kingdom, Germany, France, Italy, Canada, Australia, South Africa, Scotland, and New Zealand).

¶ 51    Indeed, both state and federal courts have held that the voluntary payment doctrine is not applicable as an affirmative defense barring claims based on violation of consumer protection statutes. See *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 23 (Wash. 2007) (*en banc*) ("the voluntary payment doctrine is inappropriate as an affirmative defense in the [consumer protection statute] context, as a matter of law, because we construe the [consumer protection statute] liberally in favor of plaintiffs"); *Huch v. Charter*

*Communications, Inc.*, 290 S.W.3d 721, 727 (Mo. 2009) (*en banc*) ("In light of the legislative purpose of the merchandising practices act [protecting consumers], the voluntary payment doctrine is not available as a defense to a violation of the act."); *Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1224 (D. Nev. 2010) (as a matter of law the voluntary payment doctrine cannot be used as a defense to violation of the Nevada Deceptive Trade Practices Act), *rev'd on other grounds*, 674 Fed. App'x 663 (9th Cir. 2017); *MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc.*, 2012 WI 15, ¶ 4, 338 Wis. 2d 647, 809 N.W.2d 857 (the conflict between allowing the voluntary payment doctrine to apply to the deceptive telecommunications billing statute and "the statute's manifest purpose *** leaves no doubt that the legislature intended that the common law defense should not be applied to bar claims under the statute"); *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 32 (Iowa 2013) (voluntary payment doctrine does not apply to preclude actions alleging violations of consumer protection statutes, and application of the doctrine in consumer protection actions would have the effect of judicially vitiating consumer protection legislation). In the context of the Illinois Consumer Fraud Act, the court noted in *Brown v. SBC Communications, Inc.*, No. 05-cv-777-JPG, 2007 WL 684133, at *9 n.3 (S.D. Ill. Mar. 1, 2007):

> "[This] Court also expresses some skepticism about the applicability of the voluntary payment doctrine to Brown's claim under the [Consumer Fraud Act]. The [Consumer Fraud Act] is of course remedial legislation that is construed broadly to effect its purpose, namely, to eradicate all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers."

¶ 52 Other courts have similarly held that the voluntary payment doctrine affirmative defense is not available if application of the doctrine would violate public policy. See, *e.g.*, *Pratt v. Smart Corp.*, 968 S.W.2d 868, 872 (Tenn. Ct. App. 1997) (voluntary payment doctrine does not come into play in situations involving a transaction that violates public policy); *U-Haul Co. of Alabama, Inc. v. Johnson*, 893 So. 2d 307, 313 n.3 (Ala. 2004) (voluntary payment doctrine does not apply in a situation that involves a transaction that violates public policy); *MacDonell v. PHH Mortgage Corp.*, 846 N.Y.S.2d 223, 224 (App. Div. 2007) (barring application of the voluntary payment doctrine when plaintiffs assert a statutory cause of action).

¶ 53 In my view, application of the voluntary payment doctrine to claims brought under the Consumer Fraud Act is not only in direct conflict with the public policy underlying that Act, but its application as an affirmative defense to Consumer Fraud Act claims undermines the legislature's intent in enacting the consumer protection statute. Use of the doctrine thus poses a threat to the effectiveness of the Consumer Fraud Act.

¶ 54 For these reasons, I believe it is inappropriate to apply the voluntary payment doctrine affirmative defense to claims brought under the Consumer Fraud Act. I would therefore affirm the judgment of the appellate court and remand the cause to the trial court for further proceedings.