2020 IL App (2d) 190642
No. 2-19-0642
Opinion filed June 3, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KATIE KAI; BAOHUA XUE; MILIN P. PATEL; ARTI D. PATEL; MACIEJ LABOWICZ; EVA LABOWICZ; VSA PROPERTIES LLC; EVERYOUNG, LLC-SERIES 1; EVERYOUNG, LLC-SERIES 2; EVERYOUNG, LLC-SERIES 3; EVERYOUNG, LLC-SERIES 4; EVERYOUNG, LLC-SERIES 5; EVERYOUNG, LLC-SERIES 6; EVERYOUNG, LLC-SERIES 7; NEWPORT HOMES PENSION PLAN; MITUL RAO; NISHABEN RAO; HEMAL RAO; SHITAL RAO; DAVID YU; JANE LEE; CHARLENE M. ROMBERG REVOCABLE LIVING TRUST; DENNIS KRULL; RENATA MAJEWSKI; GRAZYNA KIELCZESKA; BRIAN PRZYBYLSKI; BOGUSLAW PRZYBYLSKI; and MAUREEN JORDAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 18-CH-960 |
| | ) | |
| BOARD OF DIRECTORS OF SPRING HILL BUILDING 1 CONDOMINIUM ASSOCIATION, INC.; BOARD OF DIRECTORS OF SPRING HILL BUILDING 4 CONDOMINIUM ASSOCIATION, INC.; BOARD OF DIRECTORS OF SPRING HILL BUILDING 5 CONDOMINIUM ASSOCIATION, INC.; BOARD OF DIRECTORS OF SPRING HILL BUILDING 6 CONDOMINIUM ASSOCIATION, INC.; SPRING HILL CONDOMINIUMS MASTER | ) ) ) ) ) ) ) ) ) ) ) ) | |

ASSOCIATION, INC.; MOSAIC )
SPRINGHILL, LLC; DAVID I. DRESDNER; )
SHERWOOD E. BLITSTEIN; RICHARD )
BLATT; and MOSAIC BEVERLY FMC, LLC,)
                                    )
    Defendants-Appellees       )   Honorable
                                    )   Paul M. Fullerton,
(Maureen Jordan, Plaintiff-Appellant).  )   Judge, Presiding.

_____

      JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
      Justices Zenoff and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1 This case centers on the forced bulk sale of condominium units under section 15 of the Condominium Property Act (Act) (765 ILCS 605/15 (West 2018)). The plaintiffs—all individual unit owners—filed suit, contending among other things that the defendants breached their fiduciary duties toward the plaintiffs. The trial court dismissed their claims, ruling that the procedures in section 15 constituted the sole remedy available to the plaintiffs, regardless of any breach of fiduciary duty by the defendants. The correctness of that determination is the focus of this appeal.

¶ 2                       I. BACKGROUND

¶ 3   The following facts are drawn from undisputed facts in the record and the allegations of the second amended complaint (complaint). Because this is an appeal from the dismissal of that complaint, we take the facts alleged therein as true. See *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002).

¶ 4 The Spring Hill condominium complex is located in Roselle. It consists of six buildings (numbered 1 through 6), each of which has more than four units. Each building is governed by a condominium association that acts through a five-person board elected by the unit owners in that association. The associations in turn belong to a single master association for the complex. The

plaintiff Maureen Jordan owned two units in the complex: one in building 1 and one in building 6. All of the remaining plaintiffs owned units in buildings 1, 4, 5, or 6.

¶ 5      The defendant Mosaic Spring Hill, LLC (MSH), was controlled, directly or indirectly, by the defendants, David Dresdner, Sherwood Blitstein, and Richard Blatt.    Over a few years, MSH purchased a number of the units at the complex. As of October 2018, MSH owned all of the units in buildings 2 and 3. It also owned more than 75% of the units in buildings 4, 5, and 6, and a majority of the units in building 1. With this majority interest, MSH elected Dresdner, Blitstein, and Blatt (the Defendant Board Members) to the boards of each building's association as well as the master association, enabling them to exercise a controlling vote on each association's board. Dresdner was the president of the association boards for buildings 1, 4, 5, and 6, and the master association. Those boards (Defendant Boards) were all named as defendants herein.

¶ 6 Under section 15 of the Act, if a sufficient majority of the unit owners in an association  votes in favor of a bulk sale of all of the units, the majority may force such a sale. The minority owners are entitled to receive the value of their interests in the property but must sell their units as provided in the bulk sale contract. The provisions of section 15 are intended to prevent holdout unit owners from blocking a sale favored by the majority of owners.

"§ 15. Sale of property.

(a) Unless a greater percentage is provided for in the declaration or bylaws, *** not less than 75% where the property contains 4 or more units may, by affirmative vote at a meeting of unit owners duly called for such purpose, elect to sell the property. Such action shall be binding upon all unit owners, and it shall thereupon become the duty of every unit owner to execute and deliver such instruments and to perform all acts as in manner and form may be necessary to effect such sale, provided, however, that any unit owner who did not vote in favor of such action and who has filed written objection thereto with the

manager or board of managers within 20 days after the date of the meeting at which such sale was approved shall be entitled to receive from the proceeds of such sale an amount equivalent to the greater of: (i) the value of his or her interest, as determined by a fair appraisal, less the amount of any unpaid assessments or charges due and owing from such unit owner or (ii) the outstanding balance of any bona fide debt secured by the objecting unit owner's interest which was incurred by such unit owner in connection with the acquisition or refinance of the unit owner's interest, less the amount of any unpaid assessments or charges due and owing from such unit owner. The objecting unit owner is also entitled to receive from the proceeds of a sale under this Section reimbursement for reasonable relocation costs ***.

　　(b) If there is a disagreement as to the value of the interest of a unit owner who did not vote in favor of the sale of the property, that unit owner shall have a right to designate an expert in appraisal or property valuation to represent him, in which case, the prospective purchaser of the property shall designate an expert in appraisal or property valuation to represent him, and both of these experts shall mutually designate a third expert in appraisal or property valuation. The 3 experts shall constitute a panel to determine by vote of at least 2 of the members of the panel, the value of that unit owner's interest in the property." 765 ILCS 605/15 (West 2018).

¶ 7 In late 2017, the Defendant Board Members decided to acquire the remaining units that MSH did not own through a bulk sale to the defendant, Mosaic Beverly FMC, LLC—an entity that they also controlled. In preparation for this sale, they used their positions on the Defendant Boards to approve the use of association funds to pay for the services of lawyers and appraisers. They also could suppress dissent and block other potential buyers from being considered.

¶ 8 In June 2018, the Defendant Boards notified all unit owners of a July 9 meeting for each building for the purpose of approving a bulk sale of all units. A copy of a sale contract identifying Mosaic Beverly as the buyer was attached to the notices. Under the contract, owners of one-bedroom units would receive $83,475, an amount substantially less than the sale price for comparable units in Spring Hill in 2016. The contract explicitly favored the defendants in several respects. For instance, the contract did not require MSH to actually transfer its units, providing that, if the buyer or any of its affiliates owned a unit, it could elect not to actually transfer the unit and instead the ownership interest of that unit would simply be deemed to have been transferred at closing "for purposes of calculating the unit ownership of the Association transferred." (Presumably, this provision was intended to minimize any transfer taxes and avoid other ordinary consequences of unit ownership transfer. Moreover, as the units owned by MSH would not actually be sold, the low price being paid by the affiliated buyer would not matter to MSH.) Further, the buyer retained sole discretion to elect not to proceed with the sale and terminate the contract, making the obligation to proceed with the sale one-sided. The contract also included other terms that served the defendants' interests at the expense of minority unit owners, including a purported release of personal liability for association board members. The overall effect of the contract was to oust the minority unit owners on terms favoring the defendants.

¶ 9 The July 9 meetings, which were controlled by the Defendant Board Members, were cursory. For example, the meeting for building 1 was adjourned immediately after being called to order, when the Defendant Board Members realized that the sale did not have the support of 75% of the unit owners. The board refused to allow any discussion of the proposed sale, hold an actual vote, or allow a non-MSH board member to videotape the meeting. The other three meetings consisted solely of the vote, without allowing discussion of the sale contract or any other matters. Because MSH owned more than 75% of the units in buildings 4, 5, and 6, the bulk sale

of those buildings was approved. Within 20 days, all of the plaintiff unit owners except Jordan submitted written objections to the sale.

¶ 10 The plaintiffs filed suit in late July 2018, claiming breach of fiduciary duty, fraud, and civil conspiracy, and seeking an injunction to prevent the sale as well as rescission of the bulk sale contract. They filed an amended complaint in September 2018. The defendants moved to dismiss on a variety of grounds. The trial court granted the defendants' motions and dismissed the amended complaint without prejudice.

¶ 11 In October 2018, the plaintiffs filed their second amended complaint. It contained four counts at issue here: count I, alleging breach of fiduciary duty; count II, constructive fraud (based on the same facts as count I); count III, rescission; and count IV, civil conspiracy (alleging the agreement of the defendants and the buyer under the bulk sale contracts to deprive the plaintiffs of the fair value of their interests). The plaintiffs did not assert any claim that the defendants were not complying section 15 of the Act.

¶ 12 The defendants moved to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)), arguing that the plaintiffs could not assert a claim for breach of fiduciary duty (or the related claims in the other counts) because the procedure in section 15 of the Act was the sole remedy available to minority unit owners in the event of a bulk sale, regardless of whether there was any breach of fiduciary duty in the transaction. After briefing and oral argument, the trial court agreed and granted the defendants' motion to dismiss. However, the trial court held the case open to allow it to monitor the defendants' compliance with the appraisal process outlined in section 15(b), on the ground that the plaintiffs could still possibly assert claims under the Act. In April 2019, the appraisers issued a report stating that the fair value of the plaintiffs' one-bedroom units was either $105,000 or $115,000, depending on condition. On June 20, 2019, the trial court ruled that the appraisers' report would

stand. The order entered that day disposed of other pending matters and stated that, "[a]ll claims and matters having been disposed of, this order is final and appealable." Jordan filed a timely appeal from the trial court's December 2018 and June 2019 orders. She was the only plaintiff to appeal.

¶ 13                                II. ANALYSIS

¶ 14 Although Jordan appealed from the trial court's orders of December 2018 (dismissing the entire complaint) and June 2019 (closing the case), she now clarifies that she challenges only the dismissal of the first four counts of the complaint.[1] Thus, we confine our analysis to the trial court's dismissal of those four claims pursuant to section 2-619 of the Code.

¶ 15                        A. Dismissal of Counts I, II, and IV

¶ 16 Under section 2-619 of the Code, claims can be dismissed if they are "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). "A motion to dismiss under section 2-619 admits well-pleaded facts but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts alleged in the complaint." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. "The propriety of a dismissal under section 2-619(a)(9) of the Code presents a question of law that we review *de novo*." *Id.* ¶ 17.

¶ 17 The trial court dismissed counts I, II, and IV of the complaint pursuant to section 2-619 of the Code because it concluded that section 15 of the Act provided the sole remedy against

---

[1] The defendants filed various motions to dismiss the appeal that were disposed of by separate orders. As a result of those orders, the Defendant Boards for buildings 1, 4, and 5 were dismissed from this appeal. The remaining appellees include MSH, the Defendant Board Members, the Defendant Board of building 6, the master association, and Mosaic Beverly.

misconduct during a forced bulk sale of condominiums, regardless of whether that misconduct also violated fiduciary duties. Although these counts assert different legal theories—breach of fiduciary duty (count I), constructive fraud (count II), and civil conspiracy (count IV)—all of them depend on the application of the law of fiduciary duty. Each claim thus raises the same legal question: was section 15 intended to supplant all other causes of action, including those based on a breach of fiduciary duty? The heart of Jordan's appeal is her contention that the trial court answered this question incorrectly.

¶ 18    The principles of statutory interpretation are well known. In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000). The best indicator of the legislature's intent is the plain language of the statute. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* "A court may also consider the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the consequences of interpreting the statute one way or another." *Sperl v. Henry*, 2018 IL 123132, ¶ 23. "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007).

¶ 19 The recognition of fiduciary duties (and a cause of action for the breach of those duties) has a centuries-long history in the common law. The defendants argue that, because section 15 of the Act includes a procedure to determine a fair price for units subject to forced bulk sales and does not explicitly mention fiduciary duties, neither such duties nor claims for their breach can apply to bulk sales of condominiums. In essence, the defendants argue that the legislature intended the statutory procedure in section 15 to displace common-law remedies. But this

argument is contrary to well-established principles governing the legislative abrogation of common-law rules.

> "Common-law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision. [Citation.] A legislative intent to alter or abrogate the common law must be plainly and clearly stated. [Citation.] As a consequence, 'Illinois courts have limited all manner of statutes in derogation of the common law to their express language, in order to effect the least—rather than the most—alteration in the common law.' " *McIntosh*, 2019 IL 123626, ¶ 30 (quoting *Rush University Medical Center v. Sessions*, 2012 IL 112906, ¶ 16).

Here, section 15 expresses no legislative intent to alter the common law of fiduciary duties. Thus, no such intent can be inferred from section 15. As further indication that the legislature did not intend the Act to displace the common law of fiduciary duty, the Act *itself* imposes a fiduciary duty on the members of the boards that govern condominium associations—a duty that they owe to unit owners such as the plaintiffs. See 765 ILCS 605/18.4 (West 2018) ("In the performance of their duties, the officers and members of the board *** shall exercise the care required of a fiduciary of the unit owners."). In light of section 18.4's express imposition of fiduciary duties upon association board members such as the Defendant Board Members, and section 15's lack of any explicit abrogation of those duties in a bulk sale, we conclude that the common law of fiduciary duty "remain[s] in full force" and applies to the bulk sale of condominiums under section 15. See *McIntosh*, 2019 IL 123626, ¶ 30.

¶ 20 The defendants argue that nothing in section 15 bars board members from owning a majority of the units, voting in accordance with their own interests, or forcing a bulk sale if sufficient votes favor that. But these are straw men—no one disputes these propositions. The defendants also point out that section 15 does not explicitly prohibit majority owners from holding

an interest in the buyer during a bulk sale. But neither does section 15 contain any explicit approval of such self-dealing; it is simply silent on the subject.

¶ 21 The defendants argue that certain aspects of section 15's provisions for appraisals of objectors' units suggest that the legislature contemplated that the buyer in a bulk sale could be the same as the majority owners, indicating that the legislature meant section 15's appraisal process to be the sole remedy even in such circumstances. Their reasoning on this point is somewhat convoluted. They point out that under section 15(b) the buyer is entitled to appoint one of the appraisers, despite the fact that the buyer might have no interest in how the objectors' units are appraised—the buyer might not necessarily have to pay more even if the appraisal is higher than the per-unit sale price in the bulk sale contract, as the statute states that the increased price paid to objectors will come from the "proceeds of the sale," not necessarily out of the buyer's pocket. The defendants argue that the only reason the legislature would give the *buyer* a voice instead of the *majority owners* (who could receive less of the sale proceeds if the appraisal results in a higher price paid to objectors) is because the legislature contemplated that the two could be the same. As we noted, however, we will not find that common-law rights have been abrogated unless the intent to do so is clearly expressed (*id.*), and that standard is not met by this multilink chain of possibility.

¶ 22 Moreover, there is a better explanation for why the legislature allowed the buyer to select one of the appraisers. When there is no self-dealing involved, the majority owners and the minority owners have the same interest—maximizing the price they will receive for their units— and majority owners can be expected to refuse to agree to any price that is significantly lower than the fair value of their units. In these circumstances, the market functions as it should to set the appropriate price, and the buyer must be given a voice to protect its interests in that process. When the majority owners and the buyer *both* seek a lower sale price, however, the market is distorted.

And when the minority owners cannot refuse to sell (as is ordinarily the case in a bulk sale under section 15), that distortion can result in substantial unfairness. In these circumstances, the availability of a cause of action for breach of fiduciary duty is especially important. For all of these reasons, we reject the defendants' argument that the language of section 15 evinces an intent to abrogate the common law of fiduciary duty.

¶ 23 The defendants next argue that, even if they owed a fiduciary duty, we cannot determine the proper scope of that duty because the record is incomplete. They note that, in some instances, the fiduciary duties owed by condominium association board members can be affected by the terms of the condominium declaration and the bylaws of the condominium association. See *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 454 (1997). Here, neither the bylaws nor the declaration was attached to the complaint or appears in the record on appeal. The lack of these documents is immaterial, however, as neither party has suggested that the scope of the defendants' fiduciary duty was in fact altered in any way by the terms of these documents. (Indeed, if the defendants wished to raise this argument, they, not plaintiffs, would have the burden to support that argument with appropriate evidence.) The current state of the record does not impede our analysis of the arguments actually raised in this appeal.

¶ 24 The defendants also argue that the complaint merely alleges that they acted in their own self-interest, which does not amount to a breach of fiduciary duty. To support this and other arguments, they cite extensively to *Hughes v. Cloonlara-Hughes Ltd. Partnership*, 2016 IL App (2d) 150715-U, an unpublished decision. The defendants' citation to this case directly contravenes Illinois Supreme Court Rule 23(e) (eff. Apr. 1, 2018), which states that such unpublished orders "may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." None of those exceptions applies

here. Supreme court rules are just that: rules. "The rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). Accordingly, we disregard all portions of the defendants' arguments based on *Hughes*.

¶ 25 Nor is there any force to their argument that, as a matter of law, mere self-interested behavior cannot equal a breach of fiduciary duty. Generally speaking, the law assumes that certain principles exist and are in operation—the law of gravity, say, or the principle that parties act in their own economic self-interest—unless these principles are counteracted by some external force. However, the imposition of a fiduciary duty is just such an external force that seeks to constrain the maximization of one's own interest at the expense of others. And, as we have held, condominium association board members owe a fiduciary duty to other unit owners. See *Boucher v. 111 East Chestnut Condominium Ass'n*, 2018 IL App (1st) 162233, ¶ 36 (condominium association board members had "strict duties to treat the unit owners 'with the utmost candor, rectitude, care, loyalty, and good faith—in fact to treat [them] as well as [they] would treat [themselves]' " (quoting *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992))). The fiduciary duty owed by the defendants here required them to "exercise the highest degree of honesty and good faith in [their] dealings ***, thereby prohibiting enhancement of [their] personal interests at the expense of the interests of the enterprise" or other unit owners. See *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 71 (1990); see also *Prignano v. Prignano*, 405 Ill. App. 3d 801, 812 (2010).

¶ 26 Here, the complaint alleged more than mere self-interested behavior. The plaintiffs alleged that the dual interests of the Defendant Board Members in both the majority unit owner MSH and the buyer Mosaic Beverly created a conflict of interest and led them to breach their fiduciary duties toward other unit owners. The complaint further alleged that the defendants used their control of the Defendant Boards to effectuate bulk sales to a buyer that they also controlled,

on terms that disadvantaged the plaintiffs in favor of the defendants. We have no difficulty in concluding that, if proven, these allegations could amount to a breach of the defendants' fiduciary duties.

¶ 27 The defendants argue that, as a matter of law, if they owed any fiduciary duty at all it was limited by their obligations under section 15, and thus the plaintiffs' concession that they complied with section 15 operates as a bar to any claim for a breach of fiduciary duty. But section 15 does not purport to rewrite the common law of fiduciary duty: as we have noted, section 15 does not itself mention fiduciary duty and thus cannot be read to place limits on the common-law scope of that duty (*McIntosh*, 2019 IL 123626, ¶ 30). Accordingly, we reject the defendants' argument that their sole fiduciary duty was to comply with section 15 and that they were free to disregard the common-law duties of fidelity, loyalty, and care.

¶ 28 The defendants argue that, even if Jordan can assert a claim for breach of fiduciary duty, their actions are protected under the "business judgment rule." That rule is intended "to protect directors who have been careful and diligent in performing their duties from being subjected to liability from honest mistakes of judgment." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 111. As the defendants concede, however, the rule applies only "[a]bsent evidence of bad faith, fraud, illegality, or gross overreaching." (Internal quotation marks omitted.) *Id.* Here, the plaintiffs alleged that the defendants engaged in exactly such bad faith and fraud, and their allegations must be taken as true at this stage of the case (*McIntosh*, 2019 IL 123626, ¶ 16). Thus, the business judgment rule does not support the dismissal of the complaint.

¶ 29 The final substantive argument the defendants raise[2] is that allowing the claims of a plaintiff like Jordan (who did not file a timely objection under section 15 to the bulk sale) to proceed would encourage "end-runs" around the objection/appraisal procedure set out in the Act. This argument overlooks the fact that the defendants' alleged self-dealing itself is not contemplated by section 15. If a bulk sale of condominiums does *not* involve violations of fiduciary duty like the self-dealing alleged here, section 15's procedures would remain the sole remedy available to unit owners. Although the defendants suggest that unit owners might raise frivolous claims of breaches of fiduciary duty, the cost and uncertainty of litigation—especially when compared to the relatively low-cost and prompt appraisal procedure contained in section 15—should deter such claims.

¶ 30 We therefore reverse the trial court's dismissal of count I, the claim for breach of fiduciary duty. The defendants' arguments regarding the claims for constructive fraud (count II) and civil conspiracy (count IV) rest on their arguments against count I, as they argue that neither of these claims can stand because the foundation—a breach of fiduciary duty—is lacking. Our rejection of this argument likewise disposes of the basis for the dismissal of counts II and IV. Having reversed the dismissal of counts I, II, and IV, we turn to the remaining count at issue in this appeal, Jordan's request for rescission.

¶ 31                           B. Dismissal of Count III—Rescission

---

[2] The defendants also raise numerous arguments about whether certain specific acts alleged in the complaint can constitute breaches of their fiduciary duties, but such arguments are best addressed on remand. Given that Jordan is the sole remaining plaintiff, she may wish to amend her complaint to tailor its scope. At that point, the defendants can better determine which arguments they wish to raise in response.

¶ 32 Count III of the complaint sought to rescind the bulk sale contracts. The trial court dismissed the count, holding that this remedy was not available as a matter of law. On appeal, Jordan argues that the trial court erred and that count III should be reinstated.

¶ 33 Rescission is "the cancelling of a contract so as to restore the parties to their initial status." *Horan v. Blowitz*, 13 Ill. 2d 126, 132 (1958). It is an equitable remedy that is available "where there has been some fraud in the making of a contract, such as an untrue statement or the concealment of a material fact, or where one party enters into a contract reasonably relying on the other party's innocent misrepresentation of a material fact." *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 165 (2004). As our supreme court has noted, "[i]t has long been the settled law in this jurisdiction" that, where it appears that "the confidential relation[ship] has been abused, the contract or transaction will be set aside, even though it is such that it would not be disturbed had no fiduciary relation existed." *Moehling v. W.E. O'Neil Construction Co.*, 20 Ill. 2d 255, 266-67 (1960). Jordan argues that, because she has alleged that the defendants breached a fiduciary duty and that the bulk sale contract involved a constructive fraud by virtue of the defendants' self-dealing, her claim for rescission should be permitted to proceed.

¶ 34 The defendants argue that, even if rescission were available as a potential remedy at the start of this litigation, it is no longer available given that the bulk sales have gone to closing. They note that more than a year has passed since the closings took place, and many of the plaintiffs who were forced to sell likely have used the proceeds for a new home or other expenses. In light of this passage of time, they argue, it would be inequitable to allow rescission of any of the contracts now.

¶ 35 We agree with Jordan that, as a general matter, the remedy of rescission is potentially available even in the context of a bulk sale. Rescission is merely one of a number of equitable

remedies that might be available when a fiduciary duty is breached (depending on the facts of the case at hand). See *id.* As we have held, section 15 of the Act does not indicate a legislative intent to curtail the common law of fiduciary duty where, as here, the underlying transaction involved self-dealing or other serious violations of fiduciary duty. Thus, common-law remedies for such violations—including rescission, injunctive relief, and other equitable relief—are not off-limits simply because the transaction is a bulk sale of condominiums. As our supreme court has stated, even transactions that ordinarily would be accepted may be set aside if they involve abuses of the relationship of trust that forms the basis for the imposition of a fiduciary duty. *Id.* Thus, the trial court erred in holding that rescission was unavailable as a matter of law.

¶ 36 Nevertheless, the defendants are also correct that, in this case, the passage of time makes rescission less equitable, in that it could upset the settled expectations of other plaintiffs (and even innocent third parties, if any of the units acquired through the bulk sale have been resold to such). Moreover, we note that Jordan seeks punitive damages in this suit. Such damages are potentially available when a transaction involved a breach of fiduciary duty (*Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 81 (1994); see also *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 152)), and they can be an appropriate avenue of relief when restoring the parties to their initial positions is not possible or advisable (*Martin*, 163 Ill. 2d at 65-66). For all of these reasons, we decline to reverse the trial court's dismissal of count III.

¶ 37                                    III. CONCLUSION

¶ 38 The judgment of the circuit court of Du Page County is affirmed as to the dismissal of count III. As to counts I, II, and IV, the judgment is reversed and the case is remanded for further proceedings consistent with this decision.

¶ 39 Affirmed in part and reversed in part.

¶ 40 Cause remanded.

---

**No. 2-19-0642**

---

| | |
|---|---|
| **Cite as:** | *Kai v. Board of Directors of Spring Hill Building 1 Condominium Ass'n*, 2020 IL App (2d) 190642 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 18-CH-960; the Hon. Paul M. Fullerton, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | John L. Quinn, of Churchill, Quinn, Richtman & Hamilton, Ltd., of Grayslake, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | James D. Wilson and Jeffrey M. Schieber, of Taft Stettinius & Hollister LLP, of Chicago, for appellees Mosaic Springhill, LLC, and Mosaic Beverly FMC, LLC, of Chicago. |
| | Matthew J. Goldberg and Britany Fijolek, of Richman, Goldberg & Gorham, LLC, of St. Charles, for other appellees. |

---